Nelson et al. *v.* Cook.

JOHN G. NELSON *et al.*, Plaintiffs in Error, *v.* ISAAC COOK, Defendant in Error.

ERROR TO COOK COUNTY COURT OF COMMON PLEAS.

An attorney prosecuting a suit has authority to direct, or consent, that goods levied upon, being of a perishable nature, or liable to be pilfered, should be sold by the officer, and the proceeds be kept for future distribution; and his client may be held by such direction or consent.

Where an attachment and execution in favor of different creditors, were directed to be levied upon a store and the goods therein, it will be understood that a technical trespass was to be committed, if necessary to effect the seizure, and each of the parties may be held for such trespass, and a general finding under a declaration for levying upon the goods, and for trespassing upon the store; it will be understood that the whole was one transaction, and no apportionment of damages should be made, as distinguishing between the trespass upon the premises and the levy upon the goods.

Nelson et al. *v.* Cook.

A return of an officer to an execution, is not simply his indorsement upon the process, but is the actual placing of it in the office from which it is issued. Until then he may change the indorsement, and afterwards, only by permission of the court.

THIS cause was tried before J. M. WILSON, Judge of the Cook county Court of Common Pleas, and a jury, at the June term, 1857, of said court.

The opinion of the court furnishes a full statement of the case.

WILLIAMS & WOODBRIDGE, and C. BECKWITH, for Plaintiffs in Error.

W. T. BURGESS, for Defendant in Error.

BREESE, J. This case has its origin as far back as June, 1848, at which date the plaintiff in error sued out an attachment from the Cook county Court of Common Pleas, as creditors of Augustus E. Miller and David R. Clements, against the estate of said Miller and Clements, and instructed the defendant in error, then sheriff of Cook county, to levy the same on a stock of dry goods and groceries, and a store in Chicago, of the value of three thousand dollars, or thereabouts, and which stock and store were claimed by one Jacob Miller as his property, but which the defendant in error was directed by Graydon and his attorney to seize as the property of Miller & Clements, and which, about the 12th June, 1848, the defendant in error did.

At the February term, 1850, Jacob Miller, in a suit of trespass *de bonis asportatis*, instituted by him against the defendant in error, recovered a judgment against him for this act and seizure, of three thousand two hundred and thirty-six dollars and twenty-three cents, which was affirmed by this court. 11th Ill. R. 610, *Cook* v. *Miller*.

The defendant in error then commenced his action by attachment, in the Lake Circuit Court, against the plaintiffs in error, in assumpsit, which, by change of venue, was tried in the Cook county Court of Common Pleas, at the September term, 1855. The issues were found for defendant in error, and a verdict and judgment in his favor for $2,603, from which, plaintiffs in error prosecuted a writ of error to this court, where the same was reversed and the cause remanded. *Nelson et al.* v. *Cook*, 17 Ill. R. 443.

The case is again brought here by writ of error, a judgment having been again rendered in favor of defendant in error, for $3,611.32.

The errors assigned, are

1st. In admitting evidence for the plaintiff below.

2nd.   In excluding evidence for defendants below.

3rd.   In giving plaintiff's instructions.

4th.   In refusing defendants' instructions.

5th.   In modifying and altering defendants' instructions, and in giving them as modified.

6th.   In refusing a motion for a new trial.

7th.   In giving judgment for the plaintiff instead of the defendants.

The pleadings on this trial are the same as in the first, and are noticed at length in 17 Ill. R. 443. The reversal of the judgment was caused, it seems, by a want of proof on the part of the defendant in error, that he did the act and made the seizure of the goods and merchandize by the direction of the plaintiffs in error. The points decided in the opinion therein delivered, are, that no right of contribution, as between tort-feasors and trespassers, exists, and that an express promise of indemnity, as against a trespass, crime or wrong, is void, and that there is no implication of indemnity to a sheriff for executing a process put into his hands, without there be an express direction to execute it in a particular manner, and that when there be doubt as to the ownership of property, and when the act to be done is not on its face wrong, or known to be so, an indemnity for an act done in relation to it, may be implied, and an action will lie. It was therefore held, that the defendant in error was not entitled to recover under the proof, upon an implied indemnity, nor without showing an express promise, or particular directions about the levy. Ibid. 450.

On the second trial, the attempt is made by the defendant in error to come up to this ruling of the court, and with what success, and in order to a true understanding of the whole case, it is necessary the evidence should be examined.

On the part of the defendant in error, he exhibited the affidavit of plaintiffs in error, for the writ of attachment, in the suit of *Nelson & Graydon* v. *Augustus Miller and David R. Clements*, filed in the Cook county Court, for the sum of $1,120$\frac{11}{100}$, on two promissory notes, and that Miller & Clements were about to depart from the State, with the intention of having their goods, and chattels, and effects, removed therefrom. Also, an attachment writ in said suit, and security for costs therein, and the indorsements and return upon said writ, showing service upon Miller & Clements, and others named in it, and the levy of the same upon a large amount of personal property, and also a store, "which has been occupied by Miller & Clements;" and then introduced, to prove the levy was made by direction of defendants, the deposition of *Samuel Rattles*, as follows:

I know the plaintiff Cook, and Graydon ; knew them in 1848. I knew there was an attachment issued against goods of Miller & Clements, then claimed to be held by Jacob Miller. The attachment was issued by Nelson & Graydon. I was not here at the time the attachment was issued, but afterwards I was here. I had a conversation, after the attachment was issued, with Graydon, at the Sherman House, at his room. He said he had attached the property—a lot of groceries, etc.—upon the Sauganash block. Graydon said that he believed that Miller & Clements were fraudulently disposing of the property, and he or they—alluding to the firm—had attached it. Did not mention Cook or Beach's name, as I recollect. He said he had caused it to be attached, and the store was then closed up. He asked me to go to Miller with him, and see if I could not get the matter closed up. I was sworn in the trial of *Jacob Miller* v. *Isaac Cook.* The same goods were in controversy in that suit that were referred to in this conversation with Graydon. I saw Graydon in Ohio, and he said he was coming up here to collect or secure his bill against Miller & Clements. A few days after the attachment was issued, I came back to town, and then had the conversation with Graydon of which I have spoken. I think it was in 1848, but the papers will show.

And also the deposition of *O. J. Rose*, as follows:

Have resided in Chicago since 1843. Have known plaintiff since then. Have known the defendant, Graydon, since 1847. I knew the firm of Miller & Clements in the year 1848. They were merchants, engaged in general merchandising, a general assortment of dry goods, boots and shoes. They were located on Lake street, south side, between Franklin and Market streets. I had a conversation with them about levying an attachment upon the goods in the store. It was, I think, in the fall of 1848, at Rose & Rattles' store. The subject of the levy was spoken of more than once at our store. Graydon said that he believed the sale of the stock of goods by Miller & Clements to Jacob Miller was done for the purpose of defrauding their creditors, or preventing their creditors from collecting their debts out of the goods, and that he meant to seize the goods. These conversations were before any levy was made. I understood a levy was made on the goods of Miller & Clements by the sheriff, by direction of Graydon, after the sale to Jacob Miller. Graydon said that Jacob Miller claimed the goods under an assumed purchase of Miller & Clements.

On his cross-examination, he says : I think this conversation was in the fall or winter of 1848. Graydon said he believed that the sale was made to prevent the New York creditors from making their claims ; that he believed it to be a fraud, and that

he meant to try the legality of it. He also spoke of the want of means of Jacob Miller to make such a purchase. He said Jacob Miller had been engaged in a livery stable here, and failing in it, and he didn't believe he had funds for such a purchase. Graydon said he believed the sale to be a fraud, and he intended to levy and try the legality of it. I am not positive as to the month or even the year when the conversation was had. I think it was late in the fall.

And on direct examination being resumed, he says: I had a a conversation with Graydon after the levy was made. He told me a levy had been made, or that he made a levy, or something to that effect. This was about all he said. I cannot say which phrase he used, or give anything more than the substance of what he said.

And the witness being afterwards recalled, said, that since his examination, he has examined the bond for costs, filed in the attachment suit against Miller & Clements, by Nelson & Graydon, signed with his name, as security, and finds himself mistaken as to the date of the conversation above spoken of. He now remembers that the conversation with Graydon was early in June, 1848. I knew John Beach in 1848, and was well acquainted with him. He was deputy sheriff under Isaac Cook. I heard conversations between Beach and Graydon two or three times, at our store, about the time of the levy. Beach was there to converse with Graydon about the levy. I heard Graydon say Beach had made the levy, and I heard Graydon say he had ordered a levy to be made. This is the substance of the conversation. There was some talk about Graydon's giving an indemnifying bond to the sheriff, and Graydon asked me if I would sign it. I hesitated about signing it, and, so far as I know, there was no bond.

The plaintiff then introduced the *præcipe*, writ, declaration, plea, and notices in the case of *Jacob Miller* v. *Isaac Cook*, in an action of trespass *de bonis asportatis*, commenced in the Cook county Court on the 15th day of August, 1848.

The first count of the declaration is for a trespass committed by defendant (Cook) on the 12th of June, 1848, in seizing certain goods and chattels in a wooden building occupied as a store, and converting the same to defendant's use.

The second count is for entering the store of plaintiff and damaging the same, by breaking doors, and hinges, and locks, and taking therefrom the goods mentioned in first count.

The third count, seizing the goods in the first count mentioned, and converting the same, and for entering plaintiff's store and ejecting him therefrom, to the damage of the plaintiff of $4,000.

In which suit the defendant filed the general issue, with notices.

First. The defendant, at the time when, etc., he was acting sheriff of Cook county, and from that time until the commencement of this suit continued such sheriff, and, at the time and place in the declaration mentioned, he did, by John Beach, his deputy, seize the goods, etc., as the property of Augustus Miller and David R. Clements, found in their store in Chicago, in their possession and control, by virtue of a writ of attachment, duly issued by the clerk of this court, and directed to the sheriff of Cook county, at the suit of William Graydon and John G. Nelson, commanding the sheriff to levy upon the real and personal estate of Augustus Miller and David R. Clements, and said defendant, as sheriff, by virtue of said writ, by his deputy, levied and took said goods and chattels, as the property of Miller & Clements, found in their possession, and the same were the property of Miller & Clements, and not the property of the plaintiff.

Second. That the defendant, before and at the time of the alleged taking, was sheriff of Cook county, and that Henry Yelverton, Robert Yelverton, and George A. Fellows, at the June term, 1846, obtained a judgment against Miller & Clements for the sum of $1,309.92, damages and cost of suit, upon which judgment an execution was issued and placed in defendant's hands to be executed, by which writ he was directed to levy upon Miller & Clements' property, and by virtue of such execution, he did levy on the property as the property of Miller & Clements, and that the property belonged to Miller & Clements, and was not the property of plaintiff.

Third. That as sheriff of Cook county, by writs of attachment and *fieri facias* above mentioned, he levied at the time when, etc.; that he was then and there sheriff of said county, and that the goods and chattels were the property of the defendants of said writ, and not the property of the plaintiff.

The plaintiff then introduced the verdict in the case for the sum of $3,236.23, and the motion for new trial, and judgment upon the verdict.

Also, the execution in the case of *Jacob Miller* v. *Isaac Cook*, with the return thereon, the execution being for $3,236.23 damages, and $21.23¾ costs. The return shows the payment of the amount of the execution, interest and costs, by Cook, the defendant, and then rested his case.

The defendants, plaintiffs here, to sustain the issue on their part, introduced the record of the court, containing the entry of the judgment in the case of *Nelson & Graydon* v. *Miller & Clements*, on the 7th of May, 1849, quashing the writ of attach-

ment. Also, the *præcipe*, summons and declaration in the case of *Yelverton et al.* v. *Miller & Clements*. Also, the judgment of *Yelverton, Yelverton & Fellows* v. *Miller & Clements*, rendered in the Cook Circuit Court, for $1,309.92 and costs. Also, the execution issued on said judgment on the 13th of June, 1848.

The defendants then offered to read in evidence the sheriff's return, as the same was at first made, and as the same stood at the time of the first trial, the reading of which return was objected to by the plaintiff, and the objection being overruled, the plaintiff excepted. The original return to the writ having been torn off, the following was admitted to be a true copy, and was then read as follows:

By virtue of this writ, and by the direction of the plaintiff's attorney, I levied the same upon certain goods and chattels of the defendant, which had been previously taken by me on a writ of attachment issued from the Cook county Court, on the 12th day of June, A. D. 1848, in favor of John G. Nelson and William Graydon, against the estate, real or personal, of the said defendants, Miller & Clements, and executed on the same day, which property attached and levied upon is more fully described by schedule hereto annexed, which levy is subject to said attachment, and I herewith return this writ and schedule. The property not sold for the reason that said attachment writ is not disposed of, but returned into court, subject to the order of court in the premises.

By virtue of the within execution, I did, on the 13th day of June, 1848, levy upon the property here scheduled, and on the 30th day of December, 1848, at the store of Miller & Clements, in the city of Chicago, between the hours of 10 o'clock in the morning and sundown of the same day, after advertising the same according to law—the property scheduled; and that, thereupon, T. O. Donahue and others bid therefor, in separate parcels, the sum of $949.83, and after deducting the clerk's costs of $5.68¾, and the sheriff's fees of $29.48, and for clerk hire, in keeping said goods, $134.63—in all $169.79, leaving a balance of $785.72 to be applied to the payment of this execution, and no property found to make the balance, and this execution is not satisfied.                                             I. COOK, *Sheriff,*
        *December* 30, 1848.                          By JOHN BEACH, *Deputy.*

By virtue of the within execution, I have levied upon the following property, subject to attachment issued from the office of the clerk of the Cook county Court, dated June 12, 1848, in favor of John G. Nelson and William Graydon, and against Augustus Miller and David R. Clements, to wit: all the goods and store which has been occupied by Miller & Clements, as will appear from the within schedule.
                                                              I. COOK, *Sheriff,*
                                                      By JOHN BEACH, *Deputy.*

The defendant then introduced as a witness,

*Louis D. Hoard,* who said that he was clerk of the Circuit Court of Cook county from 1848 to 1856. Was confident that the execution in the case of *Yelverton et al.* v. *Miller & Clements,* was returned into the Circuit Court, and was among the

Nelson et al. *v.* Cook.

files there, and that he brought it into the Common Pleas Court some years ago, upon the trial of some cause in that court. It was not the practice at that time to mark final process filed. Not one in a hundred is so marked. I do not know whether the costs were charged to the sheriff or not. It was usual to charge them upon a return of the execution. I have examined one account book, and the other I cannot find. We enter the returns when made in the return books, or within a few weeks after the executions come to our hands. There was no return entered in the return book until about two weeks ago.

Witness left the stand, and after an examination of books and papers, states that he now has no impression as to whether the execution was among the papers in the clerk's office or not; at first he thought it was, but now cannot say that he has any impression on the subject, or that he ever saw it before, except in this court. That it was always the practice, while he was clerk, to enter the returns on executions within a week or two, at farthest, after execution returned on execution docket; that, from the fact of no return having been entered on the docket, he is now satisfied the writ never was returned.

It was then admitted by plaintiff's attorney that the amended return to the execution of *Yelverton & Fellows* v. *Miller & Clements*, was made by the sheriff (Cook) about one month before this trial, without leave of the court.

The defendants then offered in evidence an affidavit of the plaintiff presented to the judge of the Circuit Court in support of a motion to amend the return, which motion was made some weeks previous to this trial; admission objected to by plaintiff, and overruled by court.

The affidavit was then read in substance as follows:

| *In the Cook Circuit Court.* | *Judgment of June,* 1848. |
|---|---|

HENRY YELVERTON, ROBERT YELVERTON
and GEORGE A. FELLOWS,                    *On motion to correct*
            *vs.*                                    *return to fi. fa.*
AUGUSTUS MILLER & DAVID R. CLEMENTS.

STATE OF ILLINOIS, } ss.
  COUNTY OF COOK.  }            *Isaac Cook* being duly sworn, doth depose that he was, during the year 1848, sheriff of said county; that, as such sheriff, there came into his hands, to be executed on the 13th day of June, 1848, an execution issued in the above entitled cause, dated that day; that by direction of the plaintiffs' attorney therein, R. V. M. Croes, he levied said execution upon a quantity of personal property, as specified in the schedule attached to said *fi. fa.*, and now on file; that said levy was made subject to the lien of an attachment writ, as specified in the levy indorsed on said writ; that after said levy had been made, the said R. V. M. Croes, the attorney for said plaintiffs, and Buckner S. Morris, one of the attorneys for the attaching creditors, directed this deponent's deputy, John

Beach, to sell said property under said execution, and hold the proceeds of the sale subject to the order of the court, as to the disposition and application to be made thereof. That accordingly, on the 30th day of December, 1848, said property was sold by said John Beach, and he realized from said sale the sum of $949.83, which sum, after deducting the taxed costs of $5.68¾ cents, the sheriff's fees $29.48 cents, and clerk hire in keeping goods $134.63 cents, in all $169.79 cents, is yet in the hands of the deponent, not applied, in fact, anywhere. That said attachment writ was quashed, and said plaintiffs have disavowed the direction to levy made by their agent, said Croes, and said money is still in affiant's hands, subject, as aforesaid; this deponent thereupon asks for leave to amend his return according to the facts of the case.                                                            I. COOK.

Sworn to on the 28th day of March, 1858.

The plaintiff then introduced *B. S. Morris,* who said that he had seen the attachment writ in the case of *Nelson & Graydon* v. *Miller & Clements;* that John G. Brown and himself were the attorneys who brought the suit; that execution had been issued upon a judgment obtained by *Yelverton & Fellows et al.* v. *Miller & Clements.* It was in the sheriff's hands; Croes was the attorney of the execution creditors. He spoke to me about a sale of the property levied on under the attachment and execution, and said they were going to have a sale of the property. I saw Beach, and Beach said the goods ought to be disposed of, as they were perishable and liable to be pilfered and stolen. I told him he must not sell unless the money was returned into court, subject to its order. I told him, if he sold, to keep the money and bring it into court; that if this was agreed to, he might make the sale. Heard afterwards that the sale had been made. I consented to a sale being made upon the terms that the money should not be paid over to either party, but retained by the sheriff and paid into court, to abide the order of the court.

On his cross-examination he says:

The only terms upon which I consented to the sale were, that the money should be brought into court to abide its order, and not to be paid over until our suit was disposed of. I knew nothing about the levy of the attachment, or about any special directions given to the sheriff about levy. I do not think that the defendants knew anything about the sale of the goods. They resided in New York; were not here at the time of the sale. We had no directions from them about sale. Croes was the person insisting upon the sale. Beach died a year or two after the sale, in 1850. I knew that if Beach sold under the execution, he would return the proceeds, as he said he would, into court, to abide its order.

The plaintiff then offered to read the return of the sheriff upon the execution in favor of *Yelverton et al.* v. *Miller et al.,* as the

same is now filed of record, to the admission of·which the defendants objected, and the objection being overruled by the court, the defendants then and there excepted.

On further examination of *B. S. Morris,* he said :

Croes claimed he was entitled to the goods, and I claimed I was. I told him I did not want to stand in their way, that they could sell under the execution, but I did not want the sheriff to pay the money over, and I knew Beach would not do so if he said so.

The return now on file to the writ was then read in evidence, as follows :

By virtue of this writ, No. 4972, and by the direction of the plaintiff's attorney, I levied the same upon certain goods and chattels as the property of the defendants therein, which had been previously taken by me on a writ of attachment issued from the Cook county Court, on the 12th day of June, A. D. 1848, in favor of John G. Nelson and William Graydon, against the real and personal estate of the said defendants, Miller & Clements, and executed on the same day, which property attached and levied upon is more fully described in a schedule hereto annexed, and which levy is subject to said attachment, and I return .this writ, that by and with the advice and consent, as well of the plaintiffs in said attachment writ as of the plaintiffs in said execution, I proceeded, on the 30th day of December, 1848, to sell said property, with the understanding between them that the proceeds of such sale should not be paid over to either of them, but brought into court to abide the order of the court in the premises, and that, having duly advertised such sale, I proceeded, on the said 30th day of December, A. D. 1848, at the store of Miller & Clements, in the city of Chicago, between the hours of 10 A. M. and sundown of the same day, to sell said property at public auction to the highest bidder, and that thereupon T. O. Donahue and others bid therefor, in separate parcels, the sum of $946.83 cents, after deducting sheriff's fees of $29.48, and expenses in keeping goods, $134 63, in all $164.11, the proceeds of said sale, $785.72, I now have in court to abide the order of the court.                      I. COOK, *Sheriff.*

*December* 30, 1848.

The plaintiff then introduced as a witness, *Wm. T. Burgess,* who said that he came into the case as attorney since the former judgment was reversed by the Supreme Court (17 Ill. R. 443.) Upon examining the case, I found the execution above spoken of, and deemed it necessary to amend the return to correspond with what I supposed were the facts. I found the execution among the papers in this cause, and supposed it had been returned into court by the sheriff. Under this impression, I made the motion to amend the return in the Circuit Court, and drew up the affidavit of Cook, heretofore introduced in evidence, and presented the same to the judge of the Circuit Court. I drew up the affidavit under the impression that the execution had been returned. Cook swore to it. I afterwards saw that the writ did not appear to be filed ; there was no indorsement upon it. I then withdrew the motion to amend the affidavit ;

the old return was torn off from the writ, and the new one annexed about a month ago. I also examined the clerk's office and found no entries there on the execution docket, or elsewhere, showing that it had been returned.

Plaintiff's and defendants' attorneys then admitted that the money raised on the sale is in the plaintiff's hands, and always has been.

This was all the evidence in the cause.

The plaintiff then asked the following instructions:

1. That if the jury believe, from the evidence in this cause, that the defendants sued out a writ of attachment from the Cook county Court, directed to the sheriff of Cook county, and that the plaintiff in this suit was, at the time, the sheriff of said county, and that the defendants caused the said Cook, by himself or his deputies, to levy upon and take under said writ, goods and chattels described in the return to that writ, the said Nelson & Graydon, or either of them, at the time representing them to be the goods of said Miller & Clements, and directing a levy to be made thereon, then the law implies an agreement on the part of said Nelson & Graydon, with the said Cook, to indemnify him against any damages he might suffer by reason of such levy; and if the jury believe, from the evidence, that Jacob Miller afterwards recovered from the said Isaac Cook, damages for having so made such a levy, then the said Cook is entitled to recover in this case the amount paid by said Cook to satisfy said judgment, and interest from the time of payment to the present.

2. That if the jury believe, from the evidence, that the sale of the goods in question was made under the execution, with the understanding between the plaintiff and the attorneys of the defendants, that the proceeds should be held to apply on the attachment of the defendants, or the execution of Yelverton & Fellows, as the court might direct, and not to be paid over to either party until the attachment suit was disposed of, then, unless they also believe, from the evidence, that said Cook did in fact pay over the money to said Yelverton & Fellows, upon said attachment suit, before the same was disposed of, he was not guilty of any breach of trust towards said Nelson & Graydon, and is entitled to recover against them such damages as he may have sustained and proved to the jury.

3. That if the said Cook still has the said money in his hands not applied, it is the province of the jury, if requested by the said Nelson & Graydon, to apply that money by way of deduction from the amount paid by said Cook to said Jacob Miller, the said Cook expressing his willingness that such discount should be made.

Nelson et al. *v.* Cook.

4. That in order to charge said Cook with a conversion of the property so as to take away his right of recovery, it should appear to the jury that the return of deputy Beach was in fact made before the disposal of the attachment suit; that if it was made after that time, then that it is of no consequence to the defendants. If the jury believe the sale was made with the understanding between the sheriff, or his deputy, and the attorney of the defendants, that the money from the sale should be paid to the party who in the end should be entitled to it, they will find for the plaintiff.

5. That the return of the sheriff to the Yelverton & Fellows execution is in the nature of an admission by the sheriff, and the action, not being upon that return, the same is open to an explanation, and the real facts of the case may be shown, viz.: that the sale was made with the consent of the said Nelson & Graydon, either through their attorney or by themselves, and that the money was not paid to either party, if the jury believe those facts proved by the evidence.

All which instructions were given by the court, and severally excepted to by the defendants.

The defendants then asked the following instructions:

3. If the jury shall believe, from the evidence, that the plaintiff made a sale in the manner set forth in the return upon the execution, as it was before it was amended, such sale is such an act as will deprive the plaintiff of his right to recover against the defendants, unless the jury shall further believe that such sale was made by the assent of the defendants.

7. That the statement in the amended return, that by and with the advice and consent of the plaintiffs in said attachment suit, the officer proceeded to sell under an understanding on the part of the plaintiffs in the attachment suit, that the proceeds of the sale should be brought into court, is not evidence of any such advice, consent or understanding on the part of the plaintiffs—which were refused by the court, and defendants excepted.

The third instruction asked for by the defendants, and above set forth, was amended by the court, by the addition, at the end of the instruction, of the words " or their attorneys," to the giving of which instruction, *as amended,* the defendants excepted.

It is agreed on behalf of the plaintiffs in error, that the sale by the defendant in error, as sheriff, under the Yelverton execution, of the property attached, was a misapplication of it, and a conversion of it to his own use, and excludes him from all remedy against the plaintiffs in error, for any damage he may have sustained by taking them under the attachment, though at their own instance and by their direction.

The testimony of Mr. Morris, attorney of the attaching cred-
itors, plaintiffs in error, satisfactorily shows under what circum-
stances, and with what understanding, this sale was made. He
says, the deputy sheriff, who made the levy, advised him that
" the goods should be disposed of, as they were perishable and
liable to be pilfered and stolen," and that he consented to the
sale " upon the terms that the money should not be paid over to
either party, but retained by the sheriff and paid into court, to
abide the order of the court." These were the terms on which
he consented, and it is insisted that he had no authority, as
attorney, to give this consent, and thus induce action by the
officer. Whilst the authority of an attorney to bind his client
in a particular case, by an arrangement made in the usual course
of a proceeding, with a view to the client's interest, is not de-
nied, it is insisted that the attorney cannot bind his client by
any arrangement, or understanding, that there shall be a depar-
ture from the usual course of proceeding.

This is readily admitted, and the authorities cited go to this
extent. The case in 10 John. R. 220, was where a debtor was
discharged by the jailor, by direction of the attorney. The
court held the jailor liable, in an action of debt, for the escape.
And so in 8 John. R. 361. Being attorney of record gave him
no authority to discharge a defendant without satisfaction. In
the case in 1 Scam. R. 123, the court decides, that an attorney
employed to defend a suit, cannot consent to the entry of a
judgment against his client without authority from him so to do,
and without his client's consent. So in the case 16 Ill. R. 272.
Where an attorney was employed by an administrator to obtain
authority to sell real estate, he is not thereby authorized to re-
ceive the purchase money on sale. And in 36 Maine R. 149, it
is held, that a party will not be bound by a contract entered
into on his behalf by his attorney at law, without previous au-
thority or subsequent notification. And this is the tenor of all
the cases, on this subject; all such acts being outside of and
beyond his general power as the attorney in the case.

We do not think this consent of Mr. Morris was beyond his
power as the attorney in this particular case, for it seems to have
a close and legitimate connection with it. Another party was
claiming the preference under an execution levied, and in the
hands of the same officer who had the writ of attachment. The
officer represents the goods as of a perishable nature and liable
to be stolen, and the attorney consents they may be sold if the
proceeds are brought into court, to be disposed of by the court,
and not paid over to either party.

The proceeds were not paid over, and the plaintiffs in error
have, in this suit, received a credit for them. We think the

Nelson et al. *v.* Cook.

attorney was in a position to consent to this arrangement, and it belonged to his position as attorney, and was in the usual course of proceeding in such cases, and with a view to his client's interest.

It is, however, insisted that his power could not extend to such an agreement as was made in this case, for the property attached was not the property of the defendant in the attachment. It had been wrongfully taken by the sheriff, under the direction of the attaching creditor, against whom the sheriff had a right of action for any damage he might sustain by reason of the trespass he was directed to commit, and with this trespass and its consequences the attorney had nothing to do; it was no part of the case in which he had been employed, and over which his authority did not extend.

It is true, his authority did not extend to the trespass or its consequences; with them he had nothing to do; but it did extend, we think, so far as to consent to a sale of the property, the right to which, and to its proceeds, was matter of uncertainty. It is manifest, that the defendant in error took this property on the attachment by the direction of the plaintiffs in error. They assumed it to be the property of their debtors, and treated it as such, and their attorney, entrusted with the management of the suit, which, being by attachment, was only in its inception by the levy, was bound so to conduct the proceedings, as that the least loss should accrue to his clients. A sale of the property, if made under the statute respecting perishable property, (R. S. 1845, ch. 9, sec. 23,) would, unquestionably, have been legal. Before taking these steps required by the statute, the officer would, as a matter of course, give the attaching creditors, or their attorney, notice, and on such notice being given him, it would be competent for him to waive the selection of the free holders, and consent to a sale. These preliminary steps could be dispensed with, by the attorney, and no injury to the plaintiffs in error can be perceived as resulting therefrom.

The attaching creditors were responsible for the value of the property at the time of its seizure, and it was, therefore, for the interest of all parties that as little loss from depreciation should be suffered as was possible, and the greatest amount realized from it.

As to the argument that the property is not now forthcoming to answer the damages, that is of no importance, if the plaintiffs in error have had the benefit of their value, which they have had, as a credit was allowed them, on the trial, for the proceeds.

And it can make no difference in this case, whether the prop-

erty was the property of the defendants in the attachment, or of some other person, for the case shows that they failed to sustain their attachment. The writ was quashed, and judgment accordingly. This judgment determined their rights as to the property, and the defendants in the attachment were entitled to its return, or its value, as they might elect. When the writ was quashed, the property was, of course, released, and the Yelverton execution held it, so that by consenting to a sale, under all these circumstances, we cannot see in what way, or in what degree, the attorney transcended his authority.

But it is argued, that there is no evidence of the amount of damages recovered by Jacob Miller against the defendant in error, for this trespass, thus ordered by the plaintiffs in error, and for which indemnity is claimed—that the declaration in that case, contains three counts.

*First.* For seizing certain goods and chattels in a wooden building or store, and converting the same, etc.

*Second.* Entering the store and damaging the same, and

*Third.* Seizing the goods in the first count mentioned, and converting the same, and for entering plaintiff's store and ejecting him therefrom, and that the jury found a *general* verdict, and appraised the damages at $3,236 $\frac{23}{100}$.

That the counts being all good, the damages should be apportioned upon them, as, with one of the causes of action set forth in the second count, that for damaging the store, the plaintiffs in error can have no connection, for an order to seize the goods, does not include an order to damage the store.

This view, we think, is quite fallacious. The declaration clearly embraces one transaction only. The direction to the defendant in error, was to seize the goods in a certain wooden store house. How could this be done except by entering the store? and every such wrongful entry, is, in legal contemplation, a damage to the store. It was all one act, as the proofs show. The same goods were in controversy in that suit, as in this. If the declaration in that case had counted upon other trespasses, distinct from those growing out of the levy of the attachment, the objection might be well taken. But all the wrongs charged upon the defendant in error, in that suit, are those, and those only, the proof shows he actually did commit under that writ. A store in Chicago, in the actual occupancy of Jacob Miller, filled with goods, which the defendant in error, by direction of the plaintiffs in error, enters, turns the occupant out, puts his own officer in, shuts up the store, and finally sells the goods. This involved the breaking of locks and doors, and, of course, damage to the store, for all of which, the plaintiffs in error are responsible. It being then, all one transaction, there was no ne-

Nelson et al. *v.* Cook.

cessity for apportioning the finding, on the several counts, the plaintiffs in error being responsible for the whole finding.

It is further agreed, that the amended return on the Yelverton execution, given in evidence, was inadmissible.

The error here, is, in considering the return as an amended return, when in fact, it is the only return, as the evidence shows, ever made of that execution.

The indorsement of the officer is one thing, and the return another. The action of the officer upon the writ is not the return, strictly speaking. It does not become a return, or bear that character, until, as the word imports, it be actually returned to the office out of which it issued.

Being indorsed, and remaining in the hands of the officer, it is under his control, and he can erase the indorsement and substitute another, at his pleasure. He is not concluded by anything he may have written upon it, until it has left his possession, and has been returned to the proper office. Nor is he then concluded, for, by a proper application to the court, and which courts rarely refuse, he can alter and amend his return; the courts holding him to his first responsibility in an action for a false return.

But what are the facts in this case, as to the return? Mr. Hoard, the clerk, says, distinctly, though at first quite confident the other way, that the Yelverton execution "never was returned." His testimony is full upon the point.

So Mr. Burgess, the attorney of the defendant in error, at first supposing the writ had been returned, made application to the court for leave to amend the return. He says he afterwards saw that the writ did not appear to be filed; there was no indorsement upon it. He then withdrew the motion to amend; the old return (indorsement) was torn off the writ, and the new one annexed, about a month before the trial. He says he also examined the clerk's office, and found no entries there, on the execution docket or elsewhere, showing that it had been returned.

In all this he is corroborated by Mr. Hoard, the clerk, whose testimony is given in full in this opinion.

We believe it to be well settled, that until an execution is actually deposited in the clerk's office, the return does not become a matter of record; and until then, the officer needs not the permission of the court to amend his return. Up to that time it is wholly under his own control and in his own power. Before it is returned to the office, the officer is not concluded.

Independent of the return now upon the writ, the defendant in error proved the facts constituting it, by competent evidence, and, therefore, cannot be considered as attempting to make by it testimony for himself.

We can see nothing improper on the part of the defendant in error, in stating the facts in his return as they were actually proved by independent testimony. If he has made a false return, he is liable to an action.

There being nothing objectionable in the instructions given, embracing as they do the law of this case, and no such errors as are assigned, the judgment of the court below must be affirmed.

*Judgment affirmed.*