# Harris *v.* Russell.

*Trespass against Sheriff and Sureties on Bond of Indemnity, for Wrongful Levy of Attachments.*

1. *Description of property in complaint.*—In trespass, less particularity in the description of the property is required than in detinue, or a statutory action to recover the specific property; and where the action is brought against a sheriff, to recover damages for a wrongful levy on a large stock of goods, consisting of several hundred different kinds of articles, such as generally compose a stock of general merchandise, it is sufficient to describe them in the complaint by the number and quantity of each different kind, as in an ordinary invoice.

2. *Wrongful levy of two attachments, as cause of action.*—To maintain a joint action against the sheriff and the sureties on two bonds of indemnity, for the wrongful levy of two attachments on a stock of goods, it must appear that the two writs were levied on the same goods, at the same time, and by the same officer; and if the identity of the goods embraced in the two levies is disputed, and is somewhat dependent on oral testimony, the question should be submitted to the jury.

3. *Amendment of levy on attachment.*—A sheriff may amend his indorsement of a levy on an attachment, so long as the writ remains in his hands; but, after it has been returned, it becomes a matter of record, and can not be amended without the permission of the court.

4. *Declarations of vendor (or debtor), as evidence against purchaser.* When the validity of a sale of goods by an insolvent debtor is assailed by his creditors, his declarations after the sale, not made in the presence of the purchaser, are not admissible as evidence against the latter.

5. *Sale and conveyance by insolvent debtor to creditor; simulated consideration; usury.*—A sale and conveyance of property by an insolvent debtor, in payment of a *bona fide* debt, will not be declared fraudulent at the instance of other creditors, because usurious interest was included in the debt, in pursuance of a stipulation made between the parties at the creation of the debt; but, when there is no such previous stipulation, and usury is included and allowed for the purpose of swelling the amount of the debt, so that it will equal or approximate the value of the property, the transaction will be declared fraudulent.

6. *Acceptance of draft or order, as debt.*—An acceptance of a draft or order is not binding, unless reduced to writing (Code, § 1766); yet

| | |
|---|---|
| 93 | 59 |
| 93 | 527 |
| 93 | 59 |
| 98 | 525 |
| 93 | 59 |
| 99 | 113 |
| 93 | 59 |
| 102 | 539 |
| 93 | 59 |
| 104 | 233 |
| 104 | 480 |
| 93 | 59 |
| 119 | 517 |
| 93 | 59 |
| 129 | 576 |
| 93 | 59 |
| e141 | 624 |

[Harris v. Russell.]

the drawee may accept it verbally and pay it, or give his note for the amount, or enter it on his books as a credit in favor of the payee, and thereby create a debt against himself in favor of the payee; but, if this is not done at the time, and is only so treated a year afterwards, when the drawee has become insolvent, and is conveying his property to the payee and another brother as creditors, it is a question for the jury whether the transaction evidences a *bona fide* debt, or is fictitious and simulated.

7. *Presumption as to terms of employment.*—When a person continues in the service of another, after the expiration of the stipulated term of employment, without any new contract, the presumption is that it is on the same terms; but this presumption is not indulged when there is an interval of several months between the two employments, and the services are different.

8. *Evidence as to value of services of clerk under contract of employment.*—When the inquiry is as to the value of a clerk's services in the employment of a merchant, no stipulated wages being agreed on at the time, and a subsequent conveyance of property in satisfaction of the debt being assailed by creditors as fraudulent, evidence as to the compensation paid clerks in other stores in the town is not relevant or admissible.

9. *Same.*—The reliability of a clerk in a store is an element to be considered in determining the value of his services, and evidence of it is relevant and admissible for that purpose.

10. *Sale and conveyance by insolvent debtor to creditor; validity as against other creditors.*—When a sale and conveyance of property by an insolvent debtor to one or more of his creditors is assailed by other creditors as fraudulent, the debtor's motive in making it is immaterial, and the only questions for considerations are, (1) the existence, *bona fides* and amount of the purchasing creditors' debts; (2) whether the sale was in absolute payment and satisfaction of the debts, at a fair valuation of the property; and (3) whether any benefit or interest was reserved or enured to the debtor.

11. *Same.*—The purchasing creditor can not go beyond obtaining satisfaction of his own debt; if he pay part of the consideration in cash, the transaction is governed by the same principles which apply to a purchase on an entirely new consideration; and if he combines with third persons, who pay cash, while he only saves his own debt, he is affected by the principles which apply to them.

12. *Same; affirmative charge ignoring material evidence.*—When there is any evidence, however weak and inconclusive it may be, tending to show a combination between the purchasing creditor and third persons to enable the insolvent debtor to dispose of all his property, the creditor only receiving goods to the amount of his debt, while the others pay cash, a charge which ignores this evidence, and instructs the jury that the case is governed only by the considerations above stated (10), is a reversible error.

13. *Charge as to burden and sufficiency of proof.*—A charge which instructs the jury that, "the burden being on the plaintiffs to make out their case to the satisfaction of the jury, if they are left in doubt as to the facts, they must find for the defendants," exacts too high a measure of proof, and is erroneous.

14. *Conduct of purchasing creditor, as operating estoppel, or showing fraud.*—The fact that the purchasing creditor, a brother of the insolvent debtor, was present at an interview between him and the attorneys of attaching creditors, on the eve of suing out the attachments, and heard him state that he was solvent, that the debts of the attaching creditors were the largest debts he owed, and that he could manage all the others, does not estop him from afterwards asserting the validity of his own debt in a contest with the attaching creditors, though it may be a circumstance to be considered by the jury in determining the existence and character of that debt.

[Harris v. Russell.]

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. JAMES B. HEAD.

This action was brought by George R. Russell and Thomas A. Russell against Benjamin P. Harris and others, to recover damages for an alleged trespass by said Harris, who was the sheriff of the county, in levying two attachments against E. J. Russell, who was a brother of the plaintiffs, on a large stock of goods which they claimed by purchase from him. One of the attachments was in favor of Carter Brothers & Co., and the other in favor of Fite & James, non-resident mercantile firms; and the sheriff having required bonds of indemnity from them, the sureties on the bonds were joined with him as defendants. The attachments seem to have been sued out and levied on the 9th February, 1882, and this action was commenced on the 29th March, 1882. The complaint described the various articles levied on, the subject of the suit, by number, quality, and other descriptive words, as usual in an inventory of a large stock of goods, making about ten pages of record paper in type-writing. The defendants demurred to the complaint, on account of uncertainty and indefiniteness in the description of the goods, but the court overruled their demurrer; and they then pleaded not guilty, and justification under legal process, attacking the sale and conveyance under which plaintiffs claimed the goods, on the ground of fraud. On the trial, numerous exceptions were reserved by the plaintiffs to the rulings of the court on evidence, and in the matter of charges given and refused; and all these rulings are here assigned as error, making 62 assignments in all.

R. A. McCLELLAN, and WATTS & SON, for appellants.

HUMES & SHEFFEY, and W. R. FRANCIS, contra.

CLOPTON, J.—The complaint describes the property by the name, style and quality of the different articles of goods alleged to have been taken, which are numerous, and such as usually compose a stock of general merchandise. In cases where it is difficult to give such particular description as would enable a person to identify and distinguish the property by inspection, such general description has been held sufficiently certain in an action of detinue.—Haynes v. Crutchfield, 7 Ala. 186; Thompson v. Pearce, 49 Ala. 210. In trespass, where damages only are recoverable, less certainty and particularity of description is required, than in detinue, where specific property is sued for.—David v. David, 66 Ala. 139. The complaint describes the property with reasonable certainty, which is all that is required.

Appellees bring the action against the sheriff and the sureties on the indemnifying bonds, for levying on the goods, under attachments against E. J. Russell, as his property. Two attachments, one in favor of Carter Bros. & Co., and the other in favor of Fite & James, and the indemnifying bonds, were introduced in evidence. In order to show a joint trespass, it became necessary for the plaintiffs to prove that the attachments were levied on all the goods mentioned in the complaint, at the same time, and by the same officer. It having been shown that a portion of the goods were in the lower, and a portion in the upper story of the store-house, a contested question arose, whether the attachments were levied on all the goods in both stories at the same time. On the question being propounded to the sheriff, on his re-direct examination, "how long after you made the levy on the goods on the lower floor before you found the goods upstairs," the presiding judge observed, "that is immaterial, it is all one levy on all the goods in the store." The evidence as to the levies consisted of the oral testimony of the sheriff, and the indorsements on the attachments. The sheriff testified that, on the day the attachments were issued, he levied them on the goods on the lower floor, and not on those on the upper floor; and in answer to questions propounded by the judge, he further stated that, after making the levy, he commenced taking an inventory, which occupied several days; and having been informed on the next or second day thereafter that there were goods upstairs, when the inventory of those below was completed, he proceeded to inventory those above; and that an attachment, sued out by another creditor, having come into his hands in the meantime, all three were levied on all the goods, and they were boxed and removed. If there were no other evidence, this might be regarded as a simultaneous levy of the two attachments on all the goods. But, on each of the writs of attachment, there appears an indorsement of a levy on the entire stock of goods in the store-house, signed in the name of the sheriff, under date of February 9, 1882; across which ink marks are drawn purporting erasure. The sheriff testified, that this entry was made by his authority, and in accordance with what he had done. There also appears on each attachment the indorsement of a levy, as made February 9, 1882, on the list of goods, a list of which is attached as Exhibit A to the attachment in favor of Fite & James, and Exhibit B to the attachment in favor of Carter Bros. & Co. also signed in the name of the sheriff, under date of March 2, 1882. These lists contain different goods. As to this entry the sheriff testified, that he did not know who made it. The second indorse-

[Harris v. Russell.]

ment was made before the return of the attachments to the court from which they issued. The return is not final, and the sheriff may amend the entry in any manner he may deem proper, while the writ is in his control. After being returned, it becomes a matter of record, and can not be amended without permission of the court.— *Welsh v. Joy*, 13 Pick. 477; *Nelson v. Cook*, 19 Ill. 440; Freeman on Ex. § 358. The indorsements on the attachments, when returned, *prima facie* show a levy on different goods. The bond of indemnity being given to induce the officer to make a levy, the sureties thereon, if the levy be wrongful, are liable as joint trespassers with the sheriff, only as to the property on which the particular attachment is levied; and if the attachments were levied on different goods, though the same persons may be the sureties on both bonds, a single action can not be maintained against them and the sheriff for a joint trespass as to all the property on which each attachment was levied; there must be a simultaneous levy of both on the same property, at the same time, and by the same officer.— *Sparkman v. Swift*, 81 Ala. 231; *Harmon v. McRae*, 91 Ala. 401. If, however, both attachments were in fact levied on all the goods, and they were seized at the same time, by the same officer, under both writs, and an indorsement thereof made by authority of the sheriff, the defendants are liable, if the levy be wrongful, as joint trespassers, though the sheriff may have thereafter erased such entry and substituted another, showing levies on different goods. Whether there was a simultaneous levy of both attachments on all the goods, or of each on different goods, though the levies were made at the same time, was a fact dependent somewhat on oral evidence, and should have been left for the determination of the jury, on consideration of the oral testimony, in connection with the indorsements on the attachments. On this state of the evidence, the judge was not authorized to assume as a fact that there was only *one* levy on *all* the goods, and the remark in respect thereto was an invasion of the province of the jury. In justice to the judge, it should be observed, that his attention was not called to the lists of goods appended to the respective attachments.

Several assignments of error go to the exclusion of the declarations of E. J. Russell, from whom plaintiffs claim to have purchased the goods prior to the issue and levy of the attachments. The declarations were made after the sale, and not in the presence or hearing of plaintiffs. The rule is well settled, that declarations of the debtor after the sale of his property, the vendee not being present, are in their nature hearsay, and can not be received in evidence to impeach or defeat his

own transfer or title, or to affect or impair the rights of his vendee.—*Strong v. Brewer*, 17 Ala. 706; *Eureka Co. v. Edwards*, 71 Ala. 248. A conspiracy to defraud creditors does not render such declarations competent, for the declarations of a co-conspirator, made after the conspiracy is terminated, and the object consummated, are regarded as the mere narrative of a past transaction, and inadmissible as against the others.—2 Whar. Ev. § 1206.

At the time of the sale of the goods to plaintiffs, February 7, 1882, E. J. Russell, who had been previously and was then engaged in merchandising, was in failing circumstances, if not insolvent, which fact was known to the plaintiffs. Their claim is, that they purchased his entire stock of goods in payment of an antecedent indebtedness, which he owed them respectively. The *bona fides* and amount of the indebtedness became most material inquiries; for, if either debt was simulated, in whole or in part, and the amount swelled with a view to make it proportionate to the value of the property, for the purpose of covering and protecting it from other creditors, the sale and transfer are void, *in toto*, at law.—*Tatum v. Hunter*, 14 Ala. 557. The main objection urged against the *bona fides* of the debt to George Russell is, that the note which evidenced it bore ten per cent. interest on its face. Defendants contend that a debt tainted with usury is not *bona fide* in legal contemplation, or in the meaning of the rule which affords protection to a purchasing creditor. This question was considered in *Lehman, Durr & Co. v. Greenhut*, 88 Ala. 478. In that case we held, that a creditor can not ordinarily impeach a sale and conveyance by his debtor of property in the payment of a debt, on the mere ground that the debt is usurious. When there is no previous agreement as to the rate of interest, and usurious interest is allowed and received for the purpose of swelling the debt to an amount not materially less than the value of the property, the transaction should be pronounced fraudulent. But, when there is an agreement as to the rate of interest in the inception of the debt, with no view to its ulterior use for a fraudulent purpose, and the debt is otherwise *bona fide*, the transaction is unassailable by a creditor, because of the usurious character of the debt. The charge of the court on this subject, and the refusals to charge as requested by defendants, are in accord with these principles. Neither is there error in the refusals to charge that the debt is not *bona fide* as to the attaching creditors, if the consideration of the note was the sale to E. J. Russell, about two years previously, of George's interest in the former partnership of E. J. Russell and brother, and the

[Harris v. Russell.]

firm was insolvent, or that some of the goods sold to plaintiffs were remnants of the old stock of that partnership. If it was insolvent, this may be a circumstance to be considered by the jury in determining the *bona fides* of the debt; but there is no evidence of the insolvency; and if the sale was made, and the value of George's interest agreed on in good faith, the goods became the property of E. J. Russell, subject to his disposition as any other individual property.

The demand of Thomas Russell consisted of two items—the value of his services as clerk and book-keeper, and a draft for one thousand dollars, drawn in his favor by W. B. Russell on E. J. Russell, which it is alleged was a present from the drawer, his brother, on the occasion of his marriage in February, 1881. The insistence of the defendants is, that the draft, not having been accepted in writing, created no debt to Thomas on the part of E. J. Russell. Under section 1766 of the Code, a person is not chargeable as acceptor, unless his acceptance is in writing—that is, acceptance in writing is an essential preliminary to its enforcement by suit against the drawee; but, without a written acceptance, he may pay the draft in money, or take it up by giving his note for the amount, or, by arrangement with the payee, place it to his credit on the books of the drawee. If E. J. Russell was, at the time the draft was drawn, indebted to the drawer in a sum larger than its amount, and it was a *bona fide* gift by W. B. Russell to Thomas, and shortly thereafter E. J. Russell was allowed a credit therefor on a settlement with W. B. Russell, and took up the draft, placing the amount to the credit of Thomas on his books, it thereupon became a debt due by him to Thomas. On the other hand, if the draft was fictitious, not intended as a real gift, and E. J. Russell did not treat it so as to constitute it a valid debt, which Thomas could have enforced by suit, and it was not entered to his credit on the books of E. J. Russell until a few days before the sale, and then was done for a fraudulent purpose, it did not constitute a *bona fide* debt as to the creditors. These were questions addressed to the jury, and were properly submitted to them by the court.

It appears that, when Thomas entered into the service of E. J. Russell as clerk and book-keeper, there was no agreement as to the amount of his compensation, except an understanding that he would be paid the reasonable value of his services. The value was not fixed until about the time of the sale of the goods, and whether the amount then agreed on was reasonable became a material question. It also appearing that Thomas had previously been in the employment of E. J. Russell at a salary less than the sum fixed, defendants asked

3

the court to instruct the jury that, in the absence of proof of an express contract, it will be presumed that he returned to the service of his brother on the same terms of his former employment. Such is the rule, when the service is continued after the expiration of the term; but it has no application when, as in this case, there was an intervention of several months, and the character of the services was different.

Several witnesses were examined, *pro* and *con*, as to the value of Thomas' services. Plaintiffs were permitted ·to inquire of some of the witnesses examined on behalf of defendants, on cross-examination, what compensation was paid other named clerks in other stores. In this there is error. Such inquiries involve a multiplicity of issues; the nature and extent of the business of the different stores, the relative capacity, qualifications and influence of the different clerks, and many other collateral circumstances, calculated to confuse the jury and draw their attention from the main inquiry; and for this reason, if no other, the testimony should have been excluded. And, as has been said, when proof is made of the amounts paid other clerks, the question returns, whether such amounts were reasonable.—*Collins v. Fowler*, 4 Ala. 647; *Spira v. Stapleton*, 88 Ala. 171; *Selma & Mer. R. R. Co. v. Knapps*, 42 Ala. 480.

The reliability of Thomas Russell being an element of, and proper to be considered in determining the value of his services, as would be his qualifications in other respects, evidence thereof was relevant.

There is no error in excluding the bond of indemnity in the Feckheimer & Co. suit. The fact that such bond was given can not affect or alter the liability of defendants as joint trespassers, if the other two attachments were simultaneously levied on all the goods.

The consideration of the several assignments of error in detail, going to exceptions to parts of the general charge, and the refusals to give the numerous charges asked by defendants, would be tedious, serving no useful purpose. We shall therefore, making a part of the general charge excepted to the basis, endeavor to state briefly the principles applicable to the different phases or aspects of the case, which there is or may be evidence tending to support, and in which it should be considered by the jury, specially noticing only such charges as may not be covered by these principles.

The court, in the general charge, having accurately instructed the jury that, if a person buys property from another for cash, the seller having the intent to defraud his creditors, and the purchaser having notice of such intent, the transaction is

[Harris v. Russell.]

fraudulent, and can be set aside by the creditors, though the purchase-money is paid in cash, continued as follows : "But that is not the case here, and the rules of law governing a purchase of that kind are not to govern you. The plaintiffs claim that they purchased the goods at a fair valuation, in payment of just debts; and I charge you that the law is, that if a person becomes insolvent, and has not sufficient means to pay all, he may prefer any creditor he pleases, and it makes no difference what the motives are that prompt him. The motive may be, that he owes a kinsman for whom he has a natural affection, or it may be that he owes some debt he deems peculiarly meritorious, or it may be that he dislikes some other creditor, and desires to defeat him. The motive is altogether immaterial. So, the only question here is, were there real *bona fide* debts existing from E. J. Russell to these plaintiffs? was the sale absolute, at a fair valuation, in payment of such debts? and was there no reservation of a benefit or interest in the goods of E. J. Russell? The case narrows itself down to this simple inquiry." Unquestionably, this is the settled law in this State in such cases; but the question is, was the court justified, on the evidence, in assuming as a fact that such is the present case.

Defendants do not pretend that the plaintiffs paid any present consideration. Their contestation is, that there is evidence tending to show a conspiracy or combination between E. J. Russell, the plaintiffs, and their other brothers, having the common purpose to defraud the creditors of the debtor; that all the transactions between them from the first of January, 1882, to the time of the sale, were in pursuance of this common purpose to appropriate the debtor's property to themselves, and form one concocted scheme to cover and protect it from the other creditors; and that a part of these transactions consisted of sales of property to one of the brothers for cash. It is settled, that when a part of the consideration is the payment of an antecedent debt, and a part is money paid, the same principles are applicable as when the purchase is entirely on a new consideration.—*Levy v. Williams*, 79 Ala. 171; *Carter Bros. v. Coleman*, 82 Ala. 177. Also, that the purchasing creditor can not go beyond the legitimate purpose of obtaining payment of his debt. A creditor who enters with other persons, not creditors, into a scheme to defraud other creditors of his debtor, transgresses the right to preference, which the law vouchsafes to the vigilant creditor; and if, in furtherance and consummation of such scheme, one of the confederates purchases property for *cash* with such fraudulent intent, a purchase of other property by the creditor in payment of his

debt comes within the operation of the principles governing a purchase on a new consideration; and all proper inquiries as to the fraudulent intent of the debtor, and the participation therein by the creditor, arise. The privilege and right to obtain payment of his debt by way of preference can not be prostituted to such a purpose.—*Jaffrey v. McGough*, 33 Ala. 202.

Affirmative instructions, given in the general charge, should present all the phases and aspects of the case which there is evidence tending to support; and however weak and inconclusive the judge may deem the testimony on any particular question, he can not properly ignore it in his instructions to the jury, it being calculated to induce them to discard or ignore material evidence.— *Woodbury v. State*, 69 Ala. 242. The effect of the charge was, to disregard and ignore whatever evidence there was tending to show a scheme to place the property of E. J. Russell beyond the reach of his creditors, and that one of the confederates purchased some property for cash, and to confine the consideration of the jury to the amount and *bona fide* character of the debts, the proportionate value of the property, and the reservation of benefit. It is not our purpose to intimate any opinion as to the sufficiency of the evidence; all we decide is, that there was evidence sufficient to require the question to be submitted to the jury.

Charge 35, after asserting that the sale and transfer of the goods to plaintiffs is fraudulent, if their debts were not *bona fide*, or any part was simulated, or the wages of Thomas Russell were exaggerated for the occasion and purpose, proceeds, that "the burden being on plaintiffs to make out their case to the satisfaction of the jury, if they are left in doubt as to the facts, they must find for the defendants." Herein consists the infirmity of the charge. In *Rowe v. Baber*, at present term, we had occasion to consider a similar charge. After having reviewed the previous decisions, it is said : "After a careful examination of all the authorities, we hold that a charge which declares that, if the evidence leaves a fact in a state of doubt and uncertainty, then the jury must consider it as not proved, exacts too high a measure of proof." As far back as the decision in *Hopper v. Ashley*, 15 Ala. 457, the same rule was declared. Speaking in reference to a similar charge, it was said : "The instruction is in very broad and general terms, and does not particularize the nature of the doubt and uncertainty which should occupy the minds of the jury, so as to induce them to withhold their sanction from the preponderating evidence in favor of the genuineness of the receipt. The fair inference is, that any degree of doubt and uncertainty was

sufficient to produce that effect, although it was not the result of the ordinary tests by which truth, or strong and overbalancing probabilities, are evolved from controverted facts." We have since repeatedly considered and condemned such charges; and have said this much because, not only in this, but in other cases, counsel seem to have been misled by general expressions in some of the decisions, which answer as guides in weighing evidence, but, when incorporated in an instruction to the jury, are calculated to induce them to understand that the evidence must be certain beyond doubt, before they can find a fact established in favor of the party on whom rests the burden of proof, notwithstanding they may be reasonably satisfied of its existence.

If true that George Russell was present and heard the representations made by E. J. Russell to the attorneys of the attaching creditors, in respect to his solvency, that the debts they held were the largest, and his ability to manage his other debts those being settled, it does not estop him from setting up his alleged debt as *bona fide*, though it may be a circumstance to be considered in determining the existence and character of the debt, and whether there was a concocted scheme. Likewise, sending out notices, in the manner and under the circumstances shown, of the transfers of notes and mortgages, if it had no connection with, or relation to the sale to plaintiffs, or was not done in furtherance of a common fraudulent purpose, would not defeat or impair the rights of plaintiffs.

Some of the charges requested by defendant are argumentative in their nature, such as charges 49, 51 and 57; others invade the province of the jury, such as charges 38 and 28; and in another phraseology is used, for which it would be better to substitute other terms less ambiguous, and not requiring explanation, such as charge 8.

We have endeavored, in considering the rulings on evidence and special charges, and in stating the general principles applicable in the different phases of the case, to cover the material questions which will probably arise on another trial.

Reversed and remanded.

McCLELLAN and WALKER, JJ., not sitting, having been of counsel.