C. V. FORNES & COMPANY, v. WRIGHT, BALDWIN & HALDANE; GEORGE F. WRIGHT AND J. N. BALDWIN, Appellants.

Law Partnership: Power of Partner to Bind Firm. A law firm is not bound to furnish bonds to its clients and receive a deposit of money to indemnify the surities, but if it does this, all its members are liable for the deposit, whether cognizant of its existence or not, though one partner alone receives it, and fails to account for it. DEEMER, J. took no part.

*Appeal from Pottawattamie District Court.*—HON. H. E. DEEMER, Judge.

### THURSDAY, MAY 24, 1894.

ACTION for the recovery of money deposited with defendants to secure surety on attachment bond. From an order sustaining a motion for a new trial as to defendant Wright, and overruling a motion for a new trial as to defendant Baldwin, defendants appeal. *Affirmed.*

*A. W. Askwith* for appellants.

*Flickinger Bros.* for appellees.

KINNE, J.—I. In June, 1885, plaintiff firm was a jobber in woolen goods in New York City. At the same time George F. Wright, John N. Baldwin, and Charles Haldane were lawyers, and constituted the firm of Wright, Baldwin & Haldane. Said firm was engaged in the law business at Council Bluffs, Iowa. At about said time, plaintiff placed in the hands of said firm for collection, a claim against one John Finken, a merchant tailor, carrying on business in said city. After receiving the claim, Wright, Baldwin & Haldane advised plaintiff that it would be necessary

to sue out an attachment against said Finken, and asked it to forward a check for one thousand dollars, for the purpose of securing someone who might go upon the attachment bond as surety. On June 30, 1885, plaintiff firm sent its check for one thousand dollars, payable to the order of defendant firm, which was received, and an agreement made to hold it as a deposit, and pay five per cent interest thereon. The bond was procured, and attachment issued. The proceeds of the draft were received by Haldane alone. Wright had no knowledge of the transaction until long after it occurred. As to Baldwin, the evidence is conflicting; he testifying that he received no part of the money, and had no knowledge of the matter until long after it had happened. Haldane moved to New York in the interest of his firm, and the suit against Finken was put in the control of other attorneys. Plaintiff made a demand on Wright, Baldwin & Haldane for the one thousand dollars and interest. Payment was refused, and a bill for services amounting to over eight hundred dollars was presented to plaintiff firm, which it declined to pay. Haldane brought suit on this bill against plaintiff in New York, which he afterward compromised on the receipt of something less than five hundred dollars. He receipted the bill in full, in the firm name, and entered into an agreement that he would see that his firm paid the one thousand dollars, or pay it himself, within a fixed time. Payment was not made, and this suit was instituted.

The defense was, in substance, that Haldane alone received the money on his own account; that the other members of the firm had nothing to do with the transaction; that Haldane had no right or authority to receive said money for the firm, and that his acts were beyond the scope of his power as a partner; that Haldane had made full settlement with plaintiff for all demands against defendants. On the trial, the court

held that Haldane's act in receiving the one thousand dollars was beyond the scope of the power of one partner to bind the others, and that only the parties receiving the money, or having knowledge of it, and exercising control over it, would be bound. It not being shown that Wright had any knowledge of the matter, the jury were instructed that no recovery could be had against him. A verdict was returned against defendant Baldwin. Both parties filed motions for a new trial. The motion as to Baldwin was overruled, and judgment entered on the verdict. As to Wright, the motion was sustained, the trial judge having changed his opinion as to the law. Both Wright and Baldwin appeal.

II.   The first question discussed by appellants is "whether a firm engaged in the general practice of law; or a member thereof, other than the one actually receiving the money, is liable for money deposited to indemnify a surety procured by him on an attachment bond in an action brought by the firm as attorneys for the plaintiff in such action." It is insisted that such an act, by a member of a law firm, is beyond the scope of the business of the firm, and hence the other partners are not liable. The determination of the question presented involves a finding as to whether Haldane's act in receiving the money was within the scope of the firm's business.

It is, we think, a common and well settled practice for attorneys to procure bonds for their clients, and to accept money, property, or other forms of security for the protection of resident sureties. That such acts are within the legitimate and proper scope of their professional employment, we have no doubt. If defendant's firm had called upon plaintiff to advance one thousand dollars to pay witness fees, court costs, and the like, and the money had been sent, and at the end of the litigation,

five hundred dollars of it remained unexpended for those purposes, and the attorney's fees had been paid, no one would question that plaintiff might recover of defendants said balance. Now, the procuring a surety on an attachment bond, in a proper case, where it becomes necessary to sue out a writ of attachment in order to secure a client's claim, is as much within the scope of the business of a firm of lawyers as is the proper prosecution of the case in other respects. We do not say that an attorney is bound to furnish such security, but to do so is not outside of the scope of the business. The practice of thus aiding clients—and especially non-resident clients—in procuring bonds and sureties is not only a common one, but in many cases necessary to secure the collection of claims which might be lost if attorneys and clients were compelled to pursue some other method. There are many things an attorney may do, the doing of which the law does not enjoin upon him as a duty, yet they are within the scope of his business. We hold, then, that while the furnishing of a surety on the attachment bond, and the receiving of money to indemnify such surety, was not a duty enjoined upon defendants, and was not an absolute necessity to the carrying on of the partnership business, still such acts were proper to be done in furtherance of the client's interest, and, when so done, all of the members of the firm, whether cognizant of the facts or not, are bound by the individual act of a partner, done in the firm name, and in furtherance of its interests. As bearing upon this, we cite the following authorities: Mechem, Ag., sec. 816; *Clark v. Randall*, 9 Wis. 135; *Pierce v. Strickland*, 2 Story, 292, Fed. Cas. No. 11,147; *Schoregge v. Gordon*, 29 Minn. 367, 13 N. W. Rep. 194; Whart. Ag., secs. 585-589; *Moulton v. Bowker*, 115 Mass. 36; Weeks, Attys. at Law, sec. 218; *Nelson v. Cook*, 19

Ill. 440; *Bank v. Geary*, 5 Pet. 99; *Jenney v. Deles-dermier*, 20 Me. 183. We need not cite authorities to the effect that, if the act done was within the scope of the firm business, then each partner is liable, regardless of his knowledge or want of knowledge of the doing of such act. It may work hardship to hold all the members of a firm liable to account for this money when it was received and appropriated by one member of the firm, and when it appears it never went into the assets of the firm; but it is a hardship incident to and growing out of the partnership relation, wherein each is liable for the act of either, if within the proper scope of the firm's business. This money was called for by the firm of Wright, Baldwin & Haldane. It was received by Haldane as a member of the firm, and so receipted for. The draft was indorsed by the latter in the firm name. It was thus a firm transaction, for which each member is accountable. The fact that Haldane conducted all the correspondence in no way affects defendants' liability.

III.   It is said that the court erred in instructing the jury that there was not sufficient evidence to sustain defendants' plea of settlement. The instruction was correct. Under the evidence touching a settlement, had it been submitted to the jury, and a verdict been found thereon in favor of the defendants, the court would have been justified in setting it aside for want of evidence to support it. Under such circumstances, it was proper to direct the jury not to consider that defense.

IV.   Other errors are assigned, but, on examination of the questions thus raised, we discover no error. It appears that the trial was fair to defendants, and the judgment below is, in all respects, AFFIRMED.

DEEMER, J., took no part.