# HAYNES v. CRUTCHFIELD.

1. Where detinue is brought for the recovery of several articles, it is not necessary that the value of each should be separately stated in the declaration, but *generally* the jury should sever the value of each by their verdict.

2. It is sufficient to declare in detinue for a negro woman by name, without stating her complexion, age, &c.; for a cow, without describing her color, mark, brand, &c.; or for a certain number of knives and forks, without mentioning the maker's name, character of the handles, &c.

3. The Court may permit a party in a civil cause to challenge a juror at any time before the cause is submitted to the jury, although they may have been selected and sworn.

4. It is not error to permit to be read to the jury, a note in writing addressed by the plaintiff to the defendant, in detinue, before the commencement of the action, requiring the latter to deliver to the bearer the chattel, for the recovery of which suit is brought;—such evidence may be unnecessary, but it could not prejudice the defendant.

5. If the trustee or one of the creditors, in a deed for the benefit of creditors, be authorized to prescribe the day of sale, and the length of time for which it shall be advertised, the failure to notify any of the creditors of the time and place, does not warrant the inference that as to one of the creditors provided for, and who attended the sale and purchased the property, that the sale was fraudulent: and the grantor who assented to and was present at the sale, cannot upon that ground defeat an action by the purchaser for the recovery of the articles sold.

6. Where the sale of property which had been conveyed by deed of trust, was, under the powers conferred, expedited, (with the assent of the grantor,) so as to prevent the interference of some of his creditors, who were prosecuting their claims to judgment; the grantor when sued by the purchaser at the trust sale for property sold, cannot for that cause defeat a recovery.

7. An agreement between A. and B. that the former should become the purchaser of property, and allow it to remain with the defendant to re-sell and reimburse the plaintiff, and if, after such payment there should be an excess, the defendant should appropriate it to himself, does not make the plaintiff the defendant's agent.

8. The mere attempt of the purchaser of property at public sale to prevent a person from bidding for it, will not render the purchase invalid as against public policy; but to have this effect the attempt must have been successful.

9. The omission of the purchaser of property at a public sale to take possession thereof, will not prevent him from maintaining *detinue* against the former owner: actual possession by the plaintiff, not being essential to the maintenance of the action.

10. In detinue for a cow and calf and fourteen hogs, it is not error, if the jury assess an aggregate sum as the value of the cow and calf, and another sum as the value of the hogs.

Writ of error to the Circuit Court of Benton.

THIS was action of detinue by the defendant in error against the plaintiff. The declaration contains two counts, each of which charge the detention of a female slave named Betty, and others who are particularly named; also many articles of household furniture, plantation tools, stock, &c., which are described generally, by their respective numbers. To each of these counts the defendant demurred, but his demurrer being overruled, he pleaded the general issue, and the cause was thereupon submitted to a jury. On the trial, the defendant excepted to the ruling of the Circuit Judge.

The points presented by the bill of exceptions may be thus succinctly stated. 1. Each of the parties challenged three of the jurors composing the panel of twelve, and the jury was then completed by summoning the requisite number of talesmen, for that purpose. This being done, the plaintiff challenged another juror of the original panel; to this the defendant objected, but his objection was overruled, and the challenge allowed.

2. The plaintiff proposed to read as evidence to the jury a written request to which is appended a schedule of the property in question; this paper is subscribed with the plaintiff's name, was proved to have been read to the defendant, and requires him to deliver the property to Robert Porter. To the admission of this paper the defendant objected, but the Court overruled the objection, and permitted it to go to the jury with the instruction that it was to be regarded by them, only as the proof of a demand.

In 1839, the defendant executed a deed of trust to M. M. Houston, to secure debts owing to the plaintiff and other debtors; some of whom lived within, and others without this State. The deed did not prescribe a day of sale, but a time was agreed on between the plaintiff and defendant, as well as the notice to be given thereof; and the trustee in advertising and selling under the deed, as to time was governed by that arrangment, although some of the creditors had no notice, and consequently were not present at the sale. In adjusting the time of the sale the object was to avoid a large judgment against the defendant. The plaintiff bid off nearly all the property that was

sold; before, at and after the sale he declared he was buying the property for the defendant. Previous to the sale it was agreed between the plaintiff and defendant, that the former would buy in the property for the defendant, and permit it to remain with him to re-sell, and after paying the plaintiff his debt, to appropriate the residue to his own purposes. While the sale was going on, the plaintiff repeatedly endeavored to induce one of the creditors provided for by the deed to cease to bid for a negro woman. All the property bid off at the sale was then, has been, and still is in defendant's possession. There was evidence tending to show that the plaintiff bought the property in question for the defendant's use; and also that he bought it for the benefit of the tavern house, which had been sold the day before, under another deed of trust, made by the defendant to secure the plaintiff's debt, and bought by the plaintiff. The defendant was in possession of the tavern at the time of the sale, and has ever since retained it. Some of the property sold low, and some at a fair price.

The Court charged the jury that if there was fraud in the sale of the property sued for, the defendant could not avail himself of it as a defence in this action.

The defendant's counsel prayed the Court to charge the jury as follows: 1. If there was an arrangement between the plaintiff and defendant by which an advantage was secured to either of them, at the expense of the other creditors mentioned in the deed; that in consequence of such an arrangement, the sale was brought on without any notice to some of the creditors mentioned in the deed, and that some of these were not present thereat: and that the plaintiff induced any person present not to bid, in consequence of which some of the property was bid off by him at less than its fair value, then as to such property the sale was void and cannot be enforced.

2. If there was an arrangement between the plaintiff and defendant, by which an advantage was secured to either of them at the expense of the creditors of the latter, who are mentioned in the deed of trust, and in consequence of such arrangement, the sale was made in the absence of some of these creditors, and without notice to them, and the plaintiff induced any person not to bid; in consequence of all which, the property bid off by him did not bring a fair price; then the sale was void

and could not be enforced thus far, unless the property was delivered.

3. If the property bid off by the plaintiff was not delivered, and the sale was made unfair by his agency, then he could not recover the same.

4. If the property has remained in the defendant's possession without ever having been delivered to the plaintiff, and the latter purchased it at an under value by inducing the belief that he was buying it for the defendant, the plaintiff is not entitled to recover the same.

5. That the plaintiff might have been the agent of the defendant, although he received no consideration therefor.

6. If there was any fraud in the sale and the plaintiff was a participant therein, he cannot recover the property in question, unless the same was delivered to him: and the same consequences follow, whether the fraud was intended to effect the creditors or the defendant; or whether consummated, or merely purposed. Each of which charges were refused, and the jury returned a verdict for the plaintiff, on which judgment was rendered.

S. F. RICE, for the plaintiff in error. The declaration is defective, in not alledging the value of each article separately, and in seeking the recovery of property much of which cannot be identified. The judgment is also obnoxious to these objections. [2 Saund. Rep. 74, b.; 6 Com. Dig. 407, 2 x. 12.]

It was irregular to permit one of the original panel of jurors to be challenged after the jury had been completed by summoning talesmen.

The letter addressed by the plaintiff to the defendant, or at least a part of it, was inadmissible as evidence for any purpose, and should have been excluded, upon the ground that it was merely the declaration of a party, forming no part of a res gestae. [Brown v. Brown, 5 Ala. Rep. 508; Greenl. Evi. 224–5, note 2.]

If there was a fraud in the sale as against the defendant, or his creditors, or both, or if the plaintiff and defendant so combined as to enable the plaintiff to purchase at an under value, in either case the plaintiff could not avail himself of his pur-

chase, if he had never had possession. In the latter case, public policy would make it inoperative. [13 Johns. Rep. 112; Com. on Con. 53, 58, 133; Chitty on Con. 113, 222, 348, 225-7; 20 Johns. Rep. 397; 7 Wend. Rep. 276; 8 Johns. Rep. 253; 8 Porter's Rep. 351; 1 Ala. Rep. N. S. 34.] The defendant may set up fraud not only in the execution of the deed of trust, but in the sale under it. [16 Mass. Rep. 384; 3 Bibb's Rep. 177; 2 Pick. Rep. 184, 191, 199, 200; 18 Id. 95, 107.]

The proof does not show a delivery of the property in question to the plaintiff, but the reverse is inferable. It cannot be said that he was invested with a title without the possession; and if this was delivered, the defendant could not be prevented from defeating a recovery upon the ground of fraud. [8 Porter's Rep. 237, 351; 9 Id. 472; Dunklin v. Wilkins, et al. 5 Ala. Rep. 199; 13 Wend. Rep. 570; 21 Maine Reports 474.]

The evidence that the plaintiff was the agent of the defendant in buying the property, was such as should have been left to the jury. [4 Porter's Rep. 321; 2 Nott & McC. Rep. 563.] If the plaintiff did purchase as the defendant's agent, then the title revested in the latter, and the plaintiff could not recover on this action. [3 Bibb's Rep. 177; 15 Johns. Rep. 1; 1 Cow. Rep. 290; 4 Wend. Rep. 394; 12 Wend. Rep. 413; 9 Leigh. Rep. 387; 10 Id. 381; 20 Maine Rep. 317.] The defendant's assent to the plaintiff's agency may be inferred;— 12 Johns. Rep. 300; 3 Cow. Rep. 281; 1 Hall's Rep. 247; 4 Porter's Rep. 321;—and this relation between the parties might be created without a legal consideration. [Story on Agency, 8-9; Paley on Agency, 249-250.]

W. P. CHILTON, for the defendant. Certainty to a common intent is sufficient in a declaration in detinue, and the authorities very satisfactorily show, that the description of the property in question is quite certain enough. [8 Vin. Ab. 40; 2 Strange's Rep. 1014] It is not necessary that the specific value of each article should be alledged. [8 Vin. Ab. 40; Bac. Ab. tit. Trover, F. F.; 2 H. Bla. Rep. 853; 2 Step. N. P. 1312.]

Conceding that the deed of trust was fraudulent as against
25

Haynes v. Crutchfield.

the defendant's creditors, he cannot be permitted to alledge the fact in evidence. [Clay's Dig. 255; 8 Porter's Rep. 351; 1 Ala. Rep. N. S. 237.]

But there was no evidence of fraud, or that the plaintiff acted as the defendant's agent in purchasing the property. If there was an agreement that the defendant should have the property upon paying plaintiff the purchase money, or that after he was reimbursed by a re-sale, the excess should be paid to the defendant, this would not affect the plaintiff's right to recover. The sale, for any thing appearing to the contrary, was fair—at least in accordance with the defendant's wishes, and the facts did not authorize him to ask the Court to instruct the jury, that the plaintiff acquired no title by the purchase. Such could not certainly have been the legal effect of the fraud supposed, unless the plaintiff had been paid the purchase money.

The title to the property in question did not vest in the defendant because the plaintiff bid it off; the arrangement between them, if any, was at most a trust, which is cognizable in a Court of equity, where ample justice could be done to the parties. If there was a fraud in the sale the defendant was a party to it, and cannot set it up. [Butler & Alford v. O'Brien, 5 Ala. Rep. 322; Foster v. Goree, Id. 424.]

COLLIER, C. J.—1. It is not necessary where the action of *detinue* is brought for the recovery of several articles, that the value of each should be stated separately in the declaration; but generally, the jury should sever the value of each by their verdict, that the plaintiff may recover them on their value, severally, in satisfaction; and the defectiveness of the finding in this respect, it is said cannot be supplied by a writ of inquiry. [1 Chitty's Plead. 123–4; 2 Steph. N. P. 1313; Pawly v. Holly, 2 W. Black. Rep. 853; 2 Stark. Ev. 494–5, notes 1 & 2.]

The declaration states the names of the slaves, the number of beds, bedsteads, &c., sought to be recovered, without a description of size, quality, &c., and this we think is quite sufficient upon demurrer. Detinue lies for writings whether in a box or not, and it is not necessary to state the date of a deed in a declaration. [2 Bacon's Ab. 317; 2 Steph. N. P.

1313.] So it may be maintained for money in a chest or bag; for particular pieces of gold or silver; for so many ounces of gold or silver; or for an infant negro naming the mother without any other description. [3 Com. Dig. 364; Bass v. Bass, 4 Hen. & Munf. Rep. 478; Holladay v. Littlepage, 2 Munf. Rep. 539.]

In Boggs v. Newton, 2 Bibb's Rep. 221, it was held, that a declaration in detinue for a horse, without designating the animal either by name, color, size, figure, &c. is bad; and that in trespass and trover where damages only are recovered, the same strictness in pleading is not required. [See 1 Chitty's Plead. 123; Buller's N. P. 49–50; 2 Saunder's Rep. 74, n. 2.]

Whether the case cited from 2d Bibb can be supported we need not inquire; perhaps it may, as "horse" is a generic term, and it is easy to specify the sex, &c. But we think it sufficient to declare for a negro woman by name, without stating her complexion, size, age, &c.; or for a cow without describing her color, mark, brand, &c.; or for so many knives and forks, without mentioning the maker's name, the character of the handles, metal, &c. In all these cases, it would be difficult by any circumlocution, so to particularize the property sued for, as to enable a person to identify and distinguish it by inspection. There are many negroes, as well as cows, knives and forks, &c., which would answer any reasonable or ordinary description that could be given on paper. This being the case, the declaration is sufficiently certain as applied to the subject matter, and to require more would, in many instances, be a denial of the remedy by action of detinue, where it is confessedly proper; for how can the loser or bailor of a great number of articles describe them with exactness and particularity? This result should be the more studiously avoided, as the statute has made the action of detinue a more efficacious, safe, and in some instances, more expeditious remedy than *trover*. [See Hildreth v. Becker & Harvey, 2 Johns. cases, 339; Coffin v. Coffin, 2 Mass. Rep. 363.]

2. It was clearly competent for the Court to allow either party to challenge a juror, at any time until the cause was submitted to the jury, although he may have been selected and sworn. A peremptory challenge should not be allowed

after the jury has been completed under the eye and with the assent of both parties; but in this case (if necessary) we might infer that a sufficient reason was shown for the exclusion of the juror. In Tatum v. Young, 1 Porter's Rep. 298, this Court said, " Where a cause has been tried by an unexceptionable jury, the law presumes no injury to either, for the want of any other person, in lieu of any of those composing that jury." The Court cited the United States v. Cornell, 2 Mason's Rep. 91, in which Mr. Justice Story said, " Even if a juror has been set aside by the Court for an insufficient cause, I do not know that it is a matter of error, if the trial has been by a jury duly sworn and impanneled, and above all exceptions. Neither the prisoner nor government in such case, can have suffered any injury." This reason is strikingly applicable to the case at bar, and we think affords a sufficient warrant for disregarding the exception to the decision of the Circuit Court upon the point we are considering.

3. The paper which was read to the jury in despite of the defendant's objection, was nothing more than a written request in the form of a letter, that the defendant would deliver to the plaintiff the property in question, or pay him the amount of the note which it had been sold to satisfy. It was certainly admissible in connection with other evidence, to show a demand and refusal, and it was thus limited by the Court. Under the first count this was perhaps necessary to be shown; but be this as it may, it was not impertinent evidence, prejudicial to the defendant, but at most merely unnecessary.

4. It is not pretended that the sale under the deed of trust is invalid, because the trustee did not pursue the directions of the deed in advertising and selling the property; and in the absence of the deed, or a recital of its contents, we cannot know that the trustee was not authorized to prescribe the day of sale and the length of time during which it should be advertised; or whether such power was not vested in any one of the creditors provided for. If a sale might be thus directed, the failure of the trustee to notify any of the creditors does not warrant the inference that as to the plaintiff, the sale was fraudulent.

The fact that the time of the sale was adjusted with a view to avoid a judgment to be rendered against the defendant does

Haynes v. Crutchfield.

not show the plaintiff contemplated a fraud upon the creditors of the former.   His object may have been to collect a debt justly due without any interference with the property by an execution; and if his debt was incurred *bona fide* (as we must intend,) the fair inference is, that such was his purpose.

The supposition that the plaintiff in purchasing the property at the trust sale was acting as the agent of the defendant, is repelled by the evidence, which shows that it was agreed that the former should become the purchaser and allow the property to remain with the defendant to re-sell and pay the plaintiff, and if after this was done any thing should remain, the defendant was to appropriate it to himself.   It may be, that the defendant acquired such a legal interest in the property immediately upon plaintiff's purchase, that the latter could not recover the possession by action at law; but this question is not raised upon the record.   The charge prayed, was, that the plaintiff might be the defendant's agent without consideration therefor. This could not be a material inquiry upon the evidence; but the attention of the Court should have been called to the agreement between the parties, its validity, and whether it constituted a bar to the action.

The effort of the plaintiff to prevent another creditor from bidding for one of the negro women, if it had been successful might, perhaps, have thus far prejudiced his right to recover, on the ground, that it is against public policy to suppress competition at auction sales.   But he cannot be in any manner affected by it, as it does not appear that his request was regarded by the bidder.

From this view of the evidence it will sufficiently appear, that it did not to any extent tend to fix a fraud upon the defendant, so as to prejudice his right of recovery.   Consequently, neither the charge given, nor those refused in respect to the *mala fides* of the sale, authorize the reversal of the judgment of the Circuit Court.   They must be regarded as abstract and not called for by the facts of the case.   [See Rochelle v. Harrison, 8 Porter's Rep. 351; Eddins v. Wilson, 1 Ala. Rep. N. S. 237.]

5.  The failure of the plaintiff to take the actual possession of the property in question at the time of his purchase, did not prevent the title from vesting.   Actual possession by the

plaintiff is not necessary to maintain detinue. [Tunstall v. McClelland, 1 Bibb's Rep. 186.] It is enough if he show property in himself and possession by the defendant. [2 Starkie's Ev. 493, and cases cited in the notes.] The fact, that some of the property sold at a low price, in the absence of fraud imputable to the plaintiff cannot affect his right to recover.

The objection to the verdict that it does not ascertain the value of the several articles sued for, so as to enable the sheriff to know what sum the plaintiff is entitled to, upon the failure to deliver any one, is not in our opinion sustainable. In Viner's Abridgement, the law upon this point is thus laid down—the plaintiff declared of three gold rings, and certain parcels of cloth, &c., to the value of £30, in a gross sum, and the defendant pleaded to all *quod non detinet*, and the jury found that he detained all to the damage of £30, if the stuff could not be re-delivered. It was agreed that the plaintiff upon offer of the defendant of part of the stuff, is not bound to receive it, but may refuse it, if he does not offer all, and then he shall have all the damages, but if he has received any part of the stuff, he has foreclosed himself of all the damages ; and therefore, because the declaration was of a sum in gross, and the defendant pleaded a plea to all, and the jury gave entire damages, it was held, that the plaintiff was entitled to judgment ; but several of the judges thought otherwise.—(p. 40, tit. Detinue, § 13.)

So, it is said, the verdict and judgment must be such, that a specific remedy may be had for a recovery of the goods detained, or a satisfaction in value for each several parcel, in case they, or either of them, cannot be returned; and therefore where the action is for several chattels, the jury ought by their verdict to assess the value of each separately. But a flock of sheep is said to be an entire thing, and if the jury neglect to find the value, the omission cannot be supplied by a writ of inquiry. [2 Steph. N. P. 1314; Buller's N. P. 51.]

In Cheney's case, (10 Coke R. 119,) the Court say, *arguendo,* in *detinue* if the jury find damages and costs and no value, as they ought, it shall not be supplied by writ of inquiry of damages ; because if the defect in the verdict could be thus supplied, the plaintiff would be prevented of his remedy by attaint, although the omission to assess damages was on purpose to

deprive the plaintiff of his attaint. But if the Court, *ex officio*, ought to inquire of any thing upon which no attaint lies, there the omission of it may be supplied by a writ of inquiry of damages.

It has been held, that where the plaintiff declared for several slaves, laying the value of each separately, and the jury find a joint value, the verdict will not support a judgment, but a writ of inquiry will be awarded that the damages may be severed. How far this decision was influenced by a local statute we are not informed. [Higginbotham v. Rucker, 2 Call's Rep. 313; Cornwell v. Truss, 2 Munf. Rep. 195.]

In Backner v. Haggin, 3 Monr. Rep. 59, the reason of the rule, why, in detinue for several articles, the value of each must be ascertained by a separate finding is said to be this, viz :—if after the operation of a *distringas* any one article cannot be had, the Court may on proper application, supersede the *distringas*, and direct a *fieri facias* or other writ for the value only. According to this rule, in an action for two horses, if one only " could be obtained and the other could not, there would be no means of ascertaining what credit should be given in value for the one obtained, and what sum should be reserved, for the one which was inaccessible; so that either the plaintiff below, must be obstructed in this event from proceeding further, or the defendant from obtaining any credit for the horse surrendered." [See Thomas and Wife v. Tanner, 6 Monr. Rep. 62, and also Thomas v. Blunt, 6 Litt. Rep. 104.]

It will appear from whatwe have said, as well as from the citations we have made, that although as a general rule, where detinue is brought for several distinct articles, *a verdict for the plaintiff should ascertain the value of each separately, yet the rule was not held universally;* as where the action is for a flock of sheep, &c.; and even where the jury assess the damages aggregately, it seems that instead of ordering a trial *de novo*, the appellate Court may remand with directions to award a writ of inquiry. Without stopping to inquire whether these several inferences are sustained by principle, we are satisfied that the objections to the verdict that it finds an aggregate sum as the value of a cow and calf, and that fourteen hogs are of the value of four dollars, without discriminating how much each is worth, are not fatal to the verdict. It is not to

be supposed that each of the hogs is of equal value, or that they are so dissimilar in appearance that they could be described on paper as to enable the sheriff or any one else to distinguish them. If then their value was separately assessed and a number less than all were offered to be returned, how could the sheriff tell for what sum to credit the judgment, or how to apply the values ascertained by the jury to each hog. All might be black, white or spotted, &c., and of the same sex, so that they could not be identified in reference to the verdict. It would then have been wholly useless to sever the value of the hogs, as from such a finding no consequences could have resulted ; and as the law does not require that which is nugatory, we think the verdict is sufficiently specific. A herd or a number of hogs are quite as much an entire thing as " a flock of sheep." The same reasoning does not apply to horses or slaves, and as to these, the general rule we have stated, it may be conceded, is applicable. True, a cow and calf are distinct animals, but as the value of each is enhanced by being connected with each other, and as the plaintiff is not obliged to receive the cow without the calf, or *vice versa*, there was no necessity for determining their values *separately*.