# David *v.* David's Adm'r.

### *Statutory Detinue for Bonds.*

66 139
93 61
66 139
99 619
66 139.
122 440

1. *Description of property in complaint.*—In detinue, or the statutory action for the recovery of specific property, the rule as to description is somewhat stricter than in trespass or trover, where damages only are recoverable; but where the action is brought by an executor or administrator, to recover bonds which have never been in his possession, but which are alleged to belong to the estate of his testator or intestate, less particularity of description is required than in other cases.

2. *Same.*—"Bonds to the amount of $2,100, issued by the county of Wilson, State of Tennessee, and known as Wilson county bonds," without other descriptive words, is not a sufficient description of the bonds, for the recov

[David v. David's Adm'r.]

ery of which an administrator sues in this case ; but the addition of words showing the denomination of the bonds, as "two bonds of $1,000 each," renders the description sufficiently certain and definite, without specifying the dates, class or numbers ; and it is not necessary to allege the authority of the maker to issue them.

3. *Motion docket.*—The motion docket is no part of the records proper of the Circuit Court, and proceedings shown by it can only become so by being enrolled as matter of record, or by bill of exceptions ; and the latter is the better practice.

4. *Relevancy of introductory evidence.*—An executor or administrator, suing for the recovery of bonds alleged to belong to the decedent's estate, which have never been in his possession, and testifying as a witness for himself, may state that he was put on inquiry, as to the bonds, by information received from others, and by his own idea of the decedent's wealth ; such testimony being merely introductory, and matter of inducement to the main issues.

5. *General objection to evidence.*—A general objection to evidence, a part of which is relevant and admissible, may be overruled entirely.

6. *Admissibility of declarations as part of res gestæ.*—A witness who purchased for the decedent some of the bonds in controversy, may testify to a conversation between himself and the intestate in reference to them, at or about the time of the negotiation and purchase, as a part of the *res gestæ.*

7. *Deposition; adopting answer of another witness.*—Under a commission to take the depositions of two witnesses, on the same interrogatories, one witness may adopt the answers of the other ; an objection to his answers, on that account, going to his credibility, according to the circumstances and nature of the matters inquired about.

8. *Relevancy of evidence showing possession or ownership of bonds by intestate.* The plaintiff, suing as administrator, for the recovery of bonds alleged to belong to the intestate at the time of his death, may show that bonds of the description sued for were found on the intestate's premises a few days after his death, and that the defendant took possession of them under a claim of ownership.

9. *Same.*—He may show, also, the payment of a large sum of money to the intestate a short time before his death, and the fact that no money was found on hand after his death, as proving his financial condition, and strengthening the probability that the money was invested in bonds.

10. *Admissibility of letters.*—Letters written by and between the plaintiff and third persons, who are not produced as witnesses, tending to show a conversion by the defendant of the bonds sued for, are mere hearsay, and inadmissible.

11. *Reversal on account of admission of illegal evidence.*—On appeal from a judgment at law, the admission of illegal evidence, against an objection properly taken, raises a presumption of injury, and is cause of reversal unless the record affirmatively repels such presumption.

APPEAL from the Circuit Court of Limestone.

Tried before the Hon. W. B. WOOD.

This action was brought by Benton Sanders, as the administrator of the estate of Robert C. David, deceased, against Mrs. Sarah David, who was the widow of said Robert C., to recover certain bonds particularly described in the affidavit and complaint ; and was commenced on the 29th July, 1873. In the affidavit accompanying the summons and complaint, the bonds were thus described : "Two bonds, of $1,000 each, issued by the State of Tennessee, and known as ' Tennessee bonds'; also, bonds to the amount of $2,100, issued by the county of Wilson in the State of Tennessee, and known as ' Wilson county bonds'; also, bonds to the amount of $6,000,

[David v. David's Adm'r.]

issued by the city of Nashville in the State of Tennessee, and known as 'Morris city bonds'; also, bonds to the amount of $2,000, issued by the city of Nashville, and known as 'Kercheval city bonds.'" The complaint contained four counts, in which the bonds were differently described. The first count followed the words of the affidavit, as above copied, with the added words, " of the aggregate value of $12,000." The second count used the following words: "Two bonds, of $1,000 each, issued by the State of Tennessee, and known as 'Tennessee bonds'; also, twenty-one (21) bonds, of $100 each, issued by the county of Wilson, State of Tennessee, and known as 'Wilson county bonds'; also, sixty (60) bonds, of $100 each, issued by the city of Nashville, in the State of Tennessee, and known as 'The Morris city bonds'; also, twenty bonds of $100 each, issued by the city of Nashville, in the State of Tennessee, and known as 'Kercheval city bonds'; of the aggregate value of $12,100." The third count described them thus: "Two bonds, of $1,000 each, issued by the State of Tennessee, and known as 'Tennessee bonds'; also, four bonds of $500 each, and one bond of $100, issued by the county of Wilson, State of Tennessee, and known as 'Wilson county bonds'; also, twelve bonds, of $500 each, issued by the city of Nashville, in the State of Tennessee, and known as 'Morris city bonds'; also, four bonds, of $500 each, issued by the said city of Nashville, and known as 'Kercheval city bonds'; of the aggregate value of $12,100." And the fourth count thus: "Two bonds, of $1,000 each, issued by the State of Tennessee, and known as Tennessee bonds'; also, two bonds, of $1,000 each, and one bond of $100, issued by the county of Wilson, State of Tennessee, and known as 'Wilson county bonds'; also, six bonds, of $1,000 each, issued by the city of Nashville, in the State of Tennessee, and known as 'Morris city bonds'; also, two bonds of $1,000 each, issued by the said city of Nashville, and known as 'Kercheval city bonds'; of the aggregate value of $12,100."

The defendant demurred to each count in the complaint, assigning the following as grounds of demurrer: "1. That there is no description, or marks of identification, of any property claimed in the first count of the complaint. 2. That the description of said personal property in said count is vague, uncertain, general, and indefinite, in this: that it is not averred that the State of Tennessee had any authority to make and issue, or ever made, issued or executed, any bonds at all, or of any kind, character or amount, or of the character, kind and amount in said first count specified; or that any bonds at all, or of the character, kind and amount in said first count specified, were ever made or issued, under

[David v. David's Adm·r.]

or in pursuance of any act or law of the State of Tennessee; or that the same were ever made or issued under any or either(?) a special, particular, or general law; or that the same has(?) or was done in and by the State of Tennessee. 3. That the said Tennessee bonds, in said first count mentioned, are not described by any marks, or means of identification, showing or specifying the class, series, dates, numbers, or any ear-marks, or means by which the said bonds can or could be identified and distinguished, either as to itself or themselves, or from others of like make, issue, and value, or the true value ascertained, or a verdict arrived at or returned, or a judgment rendered upon. 4. The same specifications and assignments of grounds, in short by consent, and by consent in lieu thereof, as if fully repeated here, as to the bonds designated 'Wilson county bonds,' in said first count mentioned; and so likewise, also in short by consent, and in lieu as aforesaid, as to the bonds designated respectively as 'Morris city bonds' and 'Kercheval city bonds,' in said first count mentioned." The same assignments were made, "in short by consent," to the other counts. The court overruled the demurrer, and the defendant then pleaded, "in short by consent, the general issue, with leave to give in evidence any matter that might be specially pleaded"; and the trial was had on issue joined on this plea.

On the trial, as the bill of exceptions states, "the plaintiff testified, as a witness for himself, that he obtained letters of administration on the estate of said Robert C. David, from the Probate Court of Limestone county, on the 9th day of June, 1873; and was then asked by his counsel this question: 'State whether or not you made any search or inquiry, by letter or otherwise, for any bonds as described in the complaint, at the house of the intestate, or of any body, shortly after you were appointed such administrator'; to which question the witness answered, 'Yes.' To this question, and also to the answer thereto, the defendant objected, because it was illegal and irrelevant; and because it inquired for the acts and doings of the plaintiff, and of third persons and persons indefinite, as evidence against the defendant, without either a predicate therefor, or showing or proposing to show the defendant's connection therewith; and because the question was leading, and suggested to the witness the answer desired." The court overruled the objections to the question and answer each, and admitted the evidence; to which rulings the defendant duly excepted. The plaintiff was then asked by his counsel, "What induced you to make the inquiry?" To this question, also, the defendant objected, "because the same is illegal and irrelevant, and because it

calls for hearsay evidence; also, because it calls for acts, declarations and conduct of the plaintiff, and of third persons, without showing any connection of the defendant therewith, or any predicate therefor; and because it is leading; and because it calls for the suspicions, opinions, ideas, beliefs and speculations of the witness." The court overruled these objections, and allowed the question to be asked; and the witness answered: From information received from others, and my own idea of his wealth, I was induced to believe he had more means than was found among his papers; and that put me upon inquiry." To this answer the defendant objected, "for the same reasons, and upon the same grounds, as those above specified to the question;" and exceptions were reserved to the overruling of the objections, and to the admission of the answer as evidence.

"The plaintiff then offered in evidence to the jury the depositions of Kennedy J. Morris and Thomas E. Stratton, taken in answer to one and the same set of interrogatories in chief and cross, under one and the same commission, by one and the same commissioner, with the several exhibits thereto." These witnesses resided in Nashville, and were there engaged in business as partners; and they testified to their various business transactions with said Robert C. David, for several years before his death, buying bonds for him, collecting interest on coupons, &c. A list of the bonds purchased by them for him, with date of purchase, amount, &c., was appended to the deposition of said Stratton; the first purchase being dated December 7th, 1869, and the last the 14th January, 1873; the bonds being described as "Tennessee bonds," "Wilson county bonds," and "Nashville bonds," and the aggregate amount being $12,100. The seventh direct interrogatory to these witnesses was in these words: "If you say that you made such investments for said Robert C. David, state whether, in any interview with you, he spoke of, treated, and accepted such bonds as his property, and as satisfactory; and if you say that he did, then say, as near as you can. what he did and declared, and when and where it was." Stratton's answer to this interrogatory was as follows: "He was up at Nashville on different occasions, and always spoke to us as being well pleased with the bonds purchased by us for him; some of which we handed to him in person, and some we sent to him. He received most of them himself in person. When he first spoke to us about purchasing the bonds, he told us he was getting too old to attend to business, and wanted to invest his money in something that would pay him; said that, as fast as he could collect up his money, he would send it to us, to be invested for

him in such bonds as we considered good, and that would pay him." At the time of filing cross-interrogatories, the defendant objected to this interrogatory, but without specifying any grounds of objection; and when the deposition was offered in evidence on the trial, she moved to suppress the interrogatory and answer, "because said interrogatory calls for illegal and irrelevant matter as evidence, and elicits, as evidence in this suit, the acts, declarations and conduct of plaintiff's intestate, and also of third persons, and matters *inter alios acta*, as evidence for himself; and because it calls for the acts, declarations and conduct of plaintiff's intestate, establishing and to establish title in himself, in and to the bonds in controversy in this suit, and not explanatory of his possession, or of the character in which said intestate held or claimed the bonds now sued for, in contradistinction to the title to the said bonds inquired about." The court overruled the objections to the questions and answer each; and allowed the evidence to be read to the jury; to which rulings the defendant duly excepted.

.Appended to Stratton's deposition as exhibits, in answer to one of the direct interrogatories, were twelve letters written by said Robert C. David to Morris & Stratton, at various dates between the 8th November, 1869, and the 17th January, 1873; inclosing money, with instructions to invest it, at their discretion, in Tennessee bonds, Nashville bonds, or Davidson or Wilson county bonds; inclosing also coupons for collection, &c. "To each and all of said exhibits, as a part of said deposition or otherwise, being read in evidence to the jury, the defendant objected, because they were illegal and irrelevant as evidence in this cause; and because they were the acts and declarations of the plaintiff's intestate, making evidence for himself, and in this suit for his administrator, as to the title in and to the bonds in controversy, and not as to the character of his possession, or the right in which he claimed to hold the same, in contradistinction to the title in and to the bonds in controversy." The court overruled the several objections, and permitted the plaintiff to read the letters as evidence to the jury; to which rulings, also, the defendant duly excepted.

The answer of the witness Morris to the third, fourth, fifth, sixth, seventh, eighth, ninth and tenth interrogatories in chief, was in these words: "I have had read over to me the answers of Thomas E. Stratton, my partner in business, to direct questions 3, 4, 5, 6, 7, 8, 9 and 10, and concur with him in the answers given thereto in his deposition in this cause, at the same time and place with this my own deposition, and under the same commission; and I adopt the

same as my answers to said interrogatories respectively."
The defendant objected to the reading of this answer as evidence to the jury, but without specifying any particular ground of objection, and duly excepted to the overruling of her objection.

The plaintiff offered in evidence, also, the deposition of W. B. Newell, of Nashville, taken on interrogatories and cross-interrogatories. No objection to the interrogatories in chief was made by the defendant, at the time of filing cross-interrogatories; but, when the deposition was offered in evidence on the trial, as the bill of exceptions states, she "objected separately to the reading of the answers to the 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 17th, 18th, 19th, 20th, 21st, 22d, 23d, 24th, 25th and 26th interrogatories, because the same are, separately and respectively, illegal evidence, and are variant to the matters and things averred in the plaintiff's complaint; and said objections being overruled by the court, and plaintiff permitted to read the same as evidence, the defendant excepted to said rulings," &c. In answer to the interrogatories thus specified, said witness stated, in substance, that on the receipt of a telegram from Mrs. David, the defendant, announcing the death of her husband, he immediately came from Nashville down to Athens, and was at the house of the deceased on the day of the funeral; that on the next day, or the second day afterwards, at the request of Mrs. David, he and Capt. Mason made a search and examination of the letters and papers of the deceased, or the papers found in the house; that Mrs. David then submitted for their inspection "a number of loose coupon bonds, which she took from a desk, or old fashioned book-case, in the northeast room of the house, of the aggregate nominal value of $10,100"; that the bonds were "mostly Nashville bonds, and bonds of some county in Tennessee," which he could not particularly describe; that he handed the bonds back to her, after examining them, and afterwards assisted her in putting them in a package, or envelope, which she gave to him, when he left, with instructions to deposit it for her in some bank in Nashville; that he did so deposit it on his return, and it remained in the bank until some time in June following, when he withdrew the package, on her order, and forwarded it to her by express. In answer to one of the cross-interrogatories, he further stated : "I recognized the papers submitted by Mrs. David for inspection, as her property. My recollection is, that she claimed everything. She stated that she had been instrumental in producing and creating all the visible property. We examined, also, into a number of letters, memoranda, trashy records, &c. I do not know, of my own

(10)

[David v. David's Adm'r.]

knowledge, to whom these things belonged. The letters were addressed to Robert C. David. Mrs. David claimed everything."

"The plaintiff then recalled himself as a witness in his own behalf, and proposed to testify that, a few days before the 18th June, 1873, he wrote a letter to said W. B Newell, of Nashville, making inquiries whether he had any bonds, or knew of the deposit of any bonds, or could give any information as to any bonds, belonging to said Robert C. David, or to his estate since his death. To the introduction of which, as evidence in this cause, the defendant objected, because there was higher and better evidence of the facts proposed to be proved, if they existed at all; and because the letter itself was not produced, and no predicate was laid for the introduction of secondary evidence; and because said proposed evidence is illegal and irrelevant"; and on several other grounds. The court overruled the several objections, and permitted the witness to testify as proposed; and the defendant duly reserved exceptions. "The plaintiff then proposed to read as evidence a letter from said W. B. Newell, in answer to the said letter which plaintiff, as he testified, had written to him"; and the court allowed the letter to be read in evidence, against the objections of the defendant. Said letter is dated the 18th July, 1873, and purports to be written in reply to a letter received from plaintiff; and in it the writer says: "Mrs. David has a deposit of money with the Mechanics' Bank, for which she holds my official obligation." The defendant excepted to the overruling of her several objections to the letter, and to its admission.

The plaintiff was allowed, also, against the objections of the defendant, to testify in the same manner as to a letter which he had written to Edgar Jones, the cashier of a bank in Nashville; and to read in evidence the reply of said Jones, dated June 21st, 1873, in which he stated: "Mr. W. B. Newell deposited with me, for safe-keeping, a package marked, '*Bonds, $10,100, Mrs. R. C. David.*'" Exceptions were duly reserved by the defendant to the admission of this testimony, and also to the admission of the letter. The plaintiff then offered in evidence another letter, written by himself to said Jones in reply to the above, and dated the 23d June, 1873, in which, referring to said package of bonds, he said: "Will you do me the kindness to give me the date of their deposit with you. I shall claim the bonds, as the administrator of R. E. David, and will have no difficulty in tracing the ownership; and I hereby request you to hold them until a further investigation." The answer to this letter, written across the back of it, and dated the 25th June, 1873, was in these words:

[David v. David's Adm'r.]

"This package was deposited May 7th, and drawn out June 23d, by order of Mrs. David." The court allowed the letter and the answer thereto to be read in evidence, against the objections of defendant; and exceptions were duly reserved to these rulings.

The plaintiff further testified to his own knowledge of his intestate's business, resources, &c.; stated that said intestate was in the habit of lending out money, " shaving notes," &c.; " that on one occasion, in 1870, or 1871, he had negotiated a loan or two with said intestate, for one Horton, amounting to $2,600, or $2,800; that Horton afterwards paid the money back," and that he had not found any money on hand after the intestate's death. Horton was also introduced as a witness for the plaintiff, " and testified that, in 1871, he borrowed $2,600 from said R. C. David, and paid it back." To Horton's testimony, and also to plaintiff's own testimony as to the transaction between said Horton and the intestate, the defendant objected, and duly reserved exceptions to the admission of the evidence. The court allowed the plaintiff, also, to prove the declarations of the intestate, made to Richardson and others, at different times during the year preceding his death, to the effect that he was investing his money in bonds as fast as he could get it in, as he was getting too old to attend ·to business; and exceptions were reserved by the defendant to the admission of this evidence.

The jury having returned a verdict for the plaintiff, the defendant made a motion in arrest of judgment, on account of alleged defects in the verdict; but the court overruled the motion, and rendered judgment on the verdict. The motion in arrest is set out in the transcript, and beneath it is the word " *Overruled*," to which the name of the presiding judge is signed; but the motion is not noticed in the bill of exceptions, nor in the judgment entry.

The several rulings of the court on the pleadings and evidence above stated, with others, and the overruling of the motion in arrest of judgment, are now assigned as error.

LUKE PRYOR, for appellant.

R. A. McCLELLAN, *contra*.

SOMERVILLE, J.—Where specific property is sued for in an action of *detinue*, brought under the statute, the rule as to description is somewhat stricter than in trespass or trover, where damages only are recoverable. It is commonly said, that certainty in pleadings ·includes both precision and particularity; but these words are used in a sense opposed to

ambiguity and generality. Reasonable certainty of description is all that can be required, even in reference to written instruments, involving such particularity only as would lead to the identification of the property, and enable the sheriff to seize it under the process. "Certainty to a common intent," as it is technically called, can mean no more than that; for it would, even in a criminal case, enable the jury to decide whether the property described in an indictment is the same as that proved to have been stolen, and, at the same time, show to the court judicially that "it could have been the subject-matter of the offense charged, and enable the defendant to plead his acquittal or conviction to a subsequent indictment relating to the same chattel."—1 Bish. Cr. Proc. § 571. And, though formerly held otherwise, the rule as to certainty is not so stringent in civil, as in criminal proceedings. *Ib.* §§ 320–21.

We think, under these principles, the words of description used in the first count of the complaint were insufficiently certain. It was too indefinite to claim merely *"bonds* to the amount of $2,100, issued by the county of Wilson, State of Tennessee, and known as Wilson county bonds," &c. The requisite particularity is, however, observed in the other counts, where the denomination of the bonds is specified; as, for example, *"two bonds* of *one thousand dollars* each, issued by the State of Tennessee," &c. It was not necessary to give the marks of identification, showing class, dates and numbers of the bonds, for this would be going beyond what would be required even in a criminal procedure. Nor was it necessary to allege the authority of the State of Tennessee, or of the other makers of the bonds, to issue them.—*Pearce v. Thompson,* 49 Ala. 210; *Haynes v. Crutchfield,* 7 Ala. 189; Stephens on Plead. 298.

Besides, in a suit brought by an administrator or executor, such as this, for property of the intestate or testator, in the possession of a defendant, it is a reasonable inference, that matters of description lie more within the knowledge of the party charged with the tort, than of the plaintiff, and less particularity of description is required in such cases on this account.—Stephens on Plead. 298.

The demurrer should have been sustained as to the first count, and was properly overruled as to the second, third and fourth counts of the complaint.

The motion docket is no part of the records proper of the Circuit Court, and proceedings shown by it can only become so by being enrolled as matter of record, or by bill of exceptions, which is the better and more approved practice. We cannot, therefore, consider the assignment of error based on

[David v. David's Adm'r.]

the refusal of the court below to arrest the judgment, this proceeding not being a part of the record.—*Waring v. Gilbert*, 28 Ala. 295.

There was no error in allowing the plaintiff, when testifying as a witness for himself, to state that he was put on inquiry as to the bonds sued for, by information received from others, and by his own idea of the wealth of the intestate. This was merely introductory, and as much a matter of inducement to the main issue in dispute, as the statement of his place of residence, vocation, or other like preliminary fact, opening the case up for the understanding ofthe court and jury.

The objection to the 7th direct interrogatory to the witnesses Stratton and Morris was untenable, and properly disallowed. It was general, and a part of the answer was relevant and admissible. The witness purchased some of the bonds, and the conversation had by him with David, the intestate, at or about the time of the negotiation and purchase, was a part of the *ges gestœ*. It is proper to overrule general objections, in such cases, where the answer contains competent as well as incompetent evidence.—*Newton v. Jackson*, 23 Ala. 335. And so with the correspondence between the intestate and these witnesses, showing the transmission of money by him, to be invested in like securities with those sued for in the present action.

It was permissible for Morris to adopt the answers of Stratton, made to the interrogatories propounded to the witnesses, the depositions having been taken under a joint commission. Such evidence is competent; but the objection may go to the credibility of a deposing witness, or not, according to the circumstances and the nature of the answer.—*Insurance Co. v. Stephens*, 51 Ala. 121; *Buckley v. Cunningham*, 34 Ala. 69.

The court did not err in overruling the objection to Newell's testimony. That portion of it was certainly relevant, which tended to show that bonds of the description of those in dispute were found on the premises of the intestate a few days after his decease, and were taken possession of by the defendant under a claim of ownership. If any part of this testimony was illegal, or irrelevant, the defendant should have separated it by proper specification.

The plaintiff was properly permitted, also, to prove the monetary transactions with Horton, and the payment of a large sum of money by him to the deceased. This was competent to show the latter's financial resources, and, as no money was found in his possession at the time of his death, it strengthened the probability of his having invested his own funds in these bonds, the title of which is in dispute.

[David v. David's Adm'r.]

The Circuit Court clearly erred, however, in permitting the plaintiff to introduce the letters from Jones and Newell, and his own letter to the former, which was returned by mail with an indorsement on it signed by Jones. This correspondence tended to show the conversion of the bonds by the defendant, and was mere hearsay. The facts, if true, should have been proved by the authors of the letters, Jones and Newell themselves, or other competent witnesses who were cognizant of them, and not second-handed by their unsworn statements.

It is insisted by appellee's counsel, that this evidence is cumulative, and ought not to furnish ground of reversal, even if improperly admitted. This principle may apply to chancery cases, where the record shows that there is sufficient legal evidence to sustain the decree, to which no objection has been sustained. The reason for such a rule is, that the appellate court, in chancery cases, has power on appeal to review all the facts, as well as the law. But not so on writ of error or appeal from a court of law, where questions of fact are determined by the jury, and are not subject to revision by this court. In such cases, error being shown, there is presumption of injury; and the rule is to reverse, unless it affirmatively and clearly appears that no injury could have resulted to the complaining party.— *Todd v. Neal*, 49 Ala. 266; 1 Brick. Dig. p. 780, §§ 100, 106.

The court also erred, in admitting the testimony of the witnesses McKinney, Hine and Richardson, as to the intestate, David's, declarations regarding his investments in Tennessee bonds. It tended to prove a material fact in the present cause, and was hearsay most obviously, being in no wise merely explanatory of possession.

We have examined the other objections interposed by the appellant, to some of the evidence, and are of opinion that they are not well taken.

Because of the errors, however, in the rulings of the Circuit Court above mentioned, the judgment must be reversed, and the cause remanded.